NUMBER
13-02-607-CR

                                 COURT
OF APPEALS

                     THIRTEENTH
DISTRICT OF TEXAS

                         CORPUS
CHRISTI B EDINBURG

 

 

RAFAEL
JAVIER RODRIGUEZ,                                                       Appellant,

 

                                                             v.

 

THE
STATE OF TEXAS,                                                                    Appellee.

 

 

 

                     On appeal from the 92nd District
Court

                                        of
Hidalgo County, Texas.

 

 

 

                                     DISSENTING OPINION

 

Before the Court En Banc

Dissenting Opinion by Chief Justice Valdez

I respectfully
dissent from the conclusion reached by the majority and would reverse and
remand this case for a new trial.  I
reach this conclusion based on appellant=s third issue, i.e., the trial court erred in
denying appellant=s motions to suppress due to an unlawful arrest.








Custody

Appellant argues
that the actions of the police on the night of the accident constituted an
improper arrest, and therefore all evidence relating to his arrest should have
been suppressed as it was collected in violation of the U.S. Constitution and
the Texas Code of Criminal Procedure .[1]  See U.S. Const.
amend. IV, V, VI; Tex. Code Crim. Proc.
Ann. art. 38.23 (Vernon 2005). 
Thus, in order to determine whether appellant=s motions to suppress were wrongfully denied, this
Court must first determine whether appellant was unlawfully arrested by the
police.  See Tex. Code Crim.
Proc. Ann. art. 15.22 (Vernon 1977) (defining arrest as being placed
under restraint or taken into custody by an officer or person with or without a
warrant).  

A determination
of whether a person has been placed in custody must be made on an ad hoc basis
in consideration of all of the objective circumstances of the arrest.  See Dowthitt v. State, 931
S.W.2d 244, 255 (Tex. Crim. App. 1996); Shiflet v. State, 732 S.W.2d
622, 629 (Tex. Crim. App. 1985).  A
person is "in custody" only if, under the circumstances, a reasonable
person would believe that his freedom of movement was restrained to the degree
associated with a formal arrest.  Stansbury
v. California, 511 U.S. 318, 322 (1994). 
In determining whether a person is in custody, we consider the
following:  (i) probable cause to arrest,
(ii) subjective intent of the police, (iii) focus of the investigation, and
(iv) subjective belief of the defendant. 
See Dowthitt, 931 S.W.2d at 254 (citing Meek v. State, 790
S.W.2d 618, 621 (Tex. Crim. App. 1990)). 








The court of
criminal appeals has outlined four general situations which typically
constitute custody:  (i) when the suspect
is physically deprived of his freedom of action in any significant way, (ii)
when a law enforcement officer tells the suspect that he cannot leave, (iii)
when law enforcement officers create a situation that would lead a reasonable
person to believe that his freedom of movement has been significantly
restricted, and (iv) when there is probable cause to arrest and law enforcement
officers do not tell the suspect that he is free to leave.  See Shiflet, 732 S.W.2d at 629.  With respect to the first three situations,
the restriction upon freedom of movement "must amount to the degree
associated with an arrest as opposed to an investigative detention."  Dowthitt, 931 S.W.2d at 255.  What begins as a noncustodial detention,
however, may become a custodial arrest as a result of police conduct during the
encounter.  See id.  In the fourth Shiflet scenario, the
officers' knowledge of probable cause must be communicated or otherwise
manifested to the suspect.  See
id.  Custody is then established
"if the manifestation of probable cause, combined with other
circumstances, would lead a reasonable person to believe that he is under
restraint to the degree associated with an arrest."  Id.

The length of
time of a suspect=s encounter with police officers, see id. at
256, the placement of a suspect in a police car and subsequent transportation
to a police station, see State v. Consaul, 960 S.W.2d 680,
686 (Tex. App.BEl Paso 1997), pet. dism'd, improvidently granted,
982 S.W.2d 899 (Tex. Crim. App. 1998), and the use of handcuffs, see Ramirez
v. State, 105 S.W.3d 730, 739 (Tex. App.BAustin
2003, no pet.), are all factors that may be considered when making a
determination of whether a suspect is in custody.








Evidence
Constituting Custody








 Here, the circumstances of the disputed
detention include the following: 
appellant was the driver of a motor vehicle involved in an accident that
occurred under circumstances indicating that appellant was at fault; the police
were called to the scene of the accident and saw several beer cans in appellant=s vehicle; appellant was told by a police officer
that the officer Awould have to take [appellant] in;@ appellant was placed in the patrol car and taken to
the police station; and at the police station, appellant was taken through the
entrance used for prisoners and was escorted to a holding room, where he was
subsequently administered multiple sobriety tests, all of which he passed.[2]  Appellant testified that throughout this time
he did not feel free to leave.  One of
the officers involved in transporting appellant to the police station testified
at the hearing on the motions to suppress that appellant Awas not allowed@ to leave police presence and, had appellant shown
any signs of resistance, he would have been handcuffed.  Furthermore, once appellant was declared not
to be intoxicated by the police chief and returned to his home, another police
officer arrived at appellant=s home some time later, performed three additional
sobriety tests, and requested that he submit to a breath analysis.[3]  Appellant, who had passed all sobriety tests
administered both at the station and at his own home, refused to provide a
breath sample, and his refusal to submit to the analysis was subsequently used
against him at trial.  Appellant was not given
any Miranda warnings at the police station nor at the scene of the
accident before being taken to the station. 
He was also not given the required statutory warnings involving a
refusal to submit to a breathalyzer when confronted at his home.  

I would conclude
from this evidence that both the third and fourth Shiflet situations
apply to the circumstances here; i.e., law enforcement officers created a
situation that would have led a reasonable person in appellant=s position to believe that his freedom of movement
was  significantly restricted; and
initially, at least, there was manifest probable cause to arrest appellant and
the officers did not tell him that he was free to leave.  See Shiflet, 732 S.W.2d at 629.  Furthermore, the State, by using appellant=s refusal to submit to a breathalyzer exam against
him in court, implicitly admitted that appellant was in fact under arrest and
therefore in custody, as the relevant statutes only allow such evidence to be
used against arrestees.  See Tex. Transp. Code Ann. ' 724.012(a) (Vernon Supp. 2004-05) (allowing a
person=s breath or blood to be tested if the person is arrested
and operating a motor vehicle in a public place); id. ' 724.012(b) (requiring a test for intoxication if an
officer arrests a person for an offense under chapter 49 involving
operation of a motor vehicle); id. ' 724.015 (requiring officer to warn suspect that
refusal to submit to testing is admissible in subsequent prosecution).  








The court of
criminal appeals has stated when applying an earlier but substantially similar
version of the transportation statute:  AThe statute requires that consent be obtained from
those individuals under arrest.  However
the statute has been construed to apply only to those persons under arrest, it
does not apply to persons not under arrest.@  Aliff v. State, 627 S.W.2d 166, 169
(Tex. Crim. App. 1982) (emphasis added); see also State v. Williams, 814
S.W.2d 256, 259 (Tex. App.BAustin 1991), aff'd, 832 S.W.2d 52 (Tex.
Crim. App. 1992).  Nonetheless, a police
officer came to appellant=s home and attempted to obtain his consent to the
breathalyzer procedure.  Thus, the State,
having treated appellant as an arrestee under the applicable transportation
statutes, cannot now legitimately argue on appeal that appellant was never
considered by police officers to have been under arrest on the night in
question. 

The State also
argues on appeal that appellant was never officially arrested because he was
not handcuffed and was never read his Miranda rights.  However, handcuffing is not dispositive, see
Ramirez, 105 S.W.3d at 739, and the officers involved testified in court
that persons taken into custody who do not present a safety threat are not
automatically handcuffed.  With regard to
the absence of Miranda warnings, we note that a failure to give a
suspect his Miranda rights typically Aresults
in forfeiture of the use of any statement obtained during that interrogation by
the prosecution during its case‑in‑chief,@ see Jones v. State, 119 S.W.3d 776, 772
(Tex. Crim. App. 2003), and, therefore, such a failure is not and should not be
considered a factor in determining whether a suspect is in custody, as such an
argument would in fact defeat the purposes of the Miranda warnings.  See Miranda v. Arizona, 384
U.S. 436, 444-45 (1966); see also Janak v. State, 826 S.W.2d 803, 805
(Tex. App.BTexarkana 1992, no pet.) (AAs the refusal to take a blood test is in the nature
of an incriminating act . . . evidence of it is not admissible unless the
statutory warning was given.@).

 








Custody
Established

Having evaluated
the circumstances of the investigation and detention, I would conclude that
appellant was placed under arrest by police at the scene of the accident but
was improperly not read any Miranda warnings.  Therefore, all evidence related to the
unlawful arrest, including evidence of appellant=s
refusal to take further sobriety tests and any testimony from police officers
relating to the unlawful custody, should have been excluded as fruits of the
poisonous tree.  See Erdman v. State,
861 S.W.2d 890, 893-94 (Tex. Crim. App. 1993) (holding that police must warn
D.W.I. suspects correctly about the statutory consequences of refusal before
introducing that refusal as evidence of intoxication); see also Sossamon
v. State, 816 S.W.2d 340, 346 (Tex. Crim. App. 1991); Corbin v. State,
91 S.W.3d 383, 385 (Tex. App.BTexarkana 2002, pet. denied). 








Appellant was
eventually released from this unlawful arrest. 
However, a police officer later came to appellant=s home, confronted appellant again, performed
additional sobriety tests, and requested a breath specimen.  The State=s own
attorney, in his closing argument, noted that results from such a test would no
longer be accurate given the time that had elapsed since the accident and
initial detention of appellant:  AThink about how much time elapsed. . . . Over an
hour, folks.  I mean, that=s almost enough time for you to be at home and watch
a DVD . . . .  Plenty of time for
somebody to sober up, to gather their thoughts. 
Plenty of time.@  Despite
this, appellant=s refusal to submit to the breathalyzer was used as
evidence against him at trial.  The
police officer=s appearance at appellant=s home therefore served to effectively reinitiate
custody, given that the statutes allowing this refusal to be used as evidence
apply only to arrestees.  See Tex. Transp. Code Ann. '' 724.012, 724.015. 
Such re-initiation of detention was clearly improper, given the lack of
probable cause or reasonable suspicion coupled with the lack of properly
administered statutory warnings concerning the consequences of such a
refusal.  See id. ' 724.015. 

We understand
that Aquestions normally accompanying the processing of a
D.W.I. arrestee do not constitute interrogation@
sufficient to implicate the right to Miranda warnings.  See Griffith v. State, 55 S.W.3d 598,
603 (Tex. Crim. App. 2001).  However, we
see that in this case, the re-initiation of custody itself was the problem, as
there was no probable cause to justify the additional intrusion, and any
evidence following from this improper detention must therefore be excluded, as
it is clearly not within the Anormal . . . processing of a D.W.I. arrestee.@  See id.;
see also id. at 601 n.5.








 
          I would conclude that a
reasonable person under these circumstances would believe that he was under
arrest throughout these police encounters. 
See Dowthitt, 931 S.W.2d at 255. 
Given the lack of Miranda warnings and the failure to permanently
release appellant following the police station=s
determination that he was not intoxicated, this arrest was improper and all
evidence derived from the circumstances of the arrest should have been excluded
at trial.  See Corbin, 91 S.W.3d
at 385; see also Tex. Code Crim.
Proc. Ann. art. 38.23 (ANo evidence obtained by an officer or other person
in violation of any provisions of the Constitution . . . shall be admitted in
evidence against the accused@).  Therefore,
the trial court abused its discretion by denying appellant=s motions to suppress and erred by allowing use of
evidence derived from the arrest.  See
Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999) (establishing
standard applied to review of motions to suppress evidence).  Furthermore, I believe the contrary
conclusion establishes a dangerous precedent in that the police, after
investigating and determining that a suspect may be released to his home, could
nonetheless legally appear on that suspect=s doorstep later, demanding further tests be
performed, then using that suspect=s subsequent refusal as evidence of
intoxication.   

Harm Analysis

Having determined
that the trial court=s denial of appellant=s
motions to suppress was erroneous, I would further conclude that the evidence
was harmful and led to reversible error, as the evidence improperly derived
from the night of appellant=s arrest made up the majority of the State=s case against appellant.  See Tex.
R. App. P. 44.2(b); see also Corbin, 91 S.W.3d at 385.  Throughout closing arguments, the State also
repeatedly emphasized appellant=s refusal to take a breathalyzer test when
confronted by police at his home, at one point explicitly noting:  AIf the defendant only had less than one beer as he
claimed to have had, why did he refuse to take a breathalyser?@  Had the
evidence derived from the arrest and subsequent refusal to submit to breath
analysis been suppressed, there would be no proof of appellant=s alleged intoxication, which is a key element of
the offense of intoxication manslaughter. 
See Tex. Pen. Code Ann.
' 49.07(a) (Vernon 2003); Janak, 826 S.W.2d at
805 (AThere was no scientific evidence of [appellant]=s intoxication . . . Evidence that [he] refused to
take blood test was thus . . . harmful.@).  Without
this evidence, there would also be no direct evidence that appellant, by reason
of intoxication, caused the accident in question, which is also a necessary
element of the offense charged.  See Tex. Pen. Code Ann. ' 49.07(a); see also Badgett v. State, 42
S.W.3d 136, 139 (Tex. Crim. App. 2001). 








Conclusion

Accordingly, I
would reverse and remand for a new trial.  See Ford v. State, 158 S.W.3d 488, 494
(Tex. Crim. App. 2005) (remanding case following finding of erroneous denial of
motion to suppress).  

 

                                           

Rogelio
Valdez,

Chief
Justice

 

 

Justice Rodriguez joins in this dissent.  

 

Publish.

Tex.
R. App. P.
47.2(b).

 

Dissenting Opinion
delivered and 

filed this 7th day of
April, 2006.                                                                        











[1]The majority opinion discusses the
proper standard of review applied when analyzing a trial court=s decision on a motion to suppress,
which we also apply.  See Oles v. State, 993 S.W.2d 103, 106 (Tex.
Crim. App. 1999); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).





[2]Although these station-house tests
were not administered by officers specially certified in sobriety testing, the
officer administering the tests at the police station testified that he
frequently administered sobriety tests during investigations of intoxicated suspects
and had nine years= experience in administering such
tests.  There was no evidence presented
to show that these tests were unreliable in any way due to the officer=s lack of a special
certification.    





[3]There is conflicting testimony in
the record as to whether appellant was asked to give a breath sample while
still at the station house.  However,
there is no dispute that appellant passed several sobriety tests and was
considered sober by the chief of police.