**Carl Michael GRIFFITH, Appellant,**

v.

**The STATE of Texas.**

No. 1957–98.

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 2001.

Forrest W. Wagner, Grand Prairie, for Appellant.

C. James Gibson, Asst. DA, Fort Worth, for State.

WOMACK, J., delivered the opinion of the Court, which KELLER, P.J., and MEYERS, PRICE, KEASLER, HERVEY and HOLCOMB, JJ., joined.

The issue in this case is whether constitutional rights were violated by the admission, as substantive evidence of guilt, of a recording of the appellant's request for an attorney when he was asked to take a breath-alcohol test before receiving *Miranda* warnings or being charged with an offense. We hold that they were not.

## I.

After Fort Worth police officers arrested the appellant on suspicion of DWI, they transported him to the police station. At the station, the appellant was taken to a room where pictures and sound were recorded on videotape. He was asked by the officers whether he would take an "intoxilyzer" test for breath alcohol. Instead of answering, he asked to consult his lawyer before deciding whether to take the test. The officers informed him that he did not have the right to have an attorney present while he took the test. After each of several inquiries as to whether he would consent to take the test, the appellant maintained that he was not refusing the test but instead wanted to ask his lawyer whether he should take the test. The police officers repeated that he did not have the right to have an attorney present, and they told him that they would take his precondition as a refusal. The appellant did not change his answer, and the police treated his request for an attorney as a refusal to take the test. Then the appellant performed some sobriety tests at the instruction of the officers. The officers later gave the appellant *Miranda* warnings, after which he voluntarily answered questions about his actions that night.

Later, the State charged the appellant with the offense of driving while intoxicated (DWI).[1] The appellant pleaded not guilty. At trial he objected to the introduction of the audio portion of the videotape, in which he requested counsel. His objection was overruled. A jury convicted the appellant, and the trial court sentenced

---

1. *See* TEX. PENAL CODE § 49.04.

him to 90–days' confinement, probated for two years, and a $450 fine. The Second Court of Appeals affirmed his conviction. *See Griffith v. State,* No. 02–97–00530–CR (Tex. App.—Fort Worth Sept. 10, 1998). We granted discretionary review to decide whether the audio portion of the videotape in which he requested counsel was properly admitted at his trial as substantive evidence of guilt.

## II. Relevancy

■ We start with the general rule that relevant evidence is admissible unless its admission would violate the federal or state constitutions, state statutes, or other laws of evidence.[2] Since the definition of "intoxicated" includes "not having the normal use of mental or physical faculties,"[3] any sign of impairment in the appellant's ability to speak would be circumstantially relevant to whether he was legally intoxicated while driving.[4]

■ Also relevant as evidence of intoxication is a refusal to take a blood-alcohol test.[5] The appellant's precondition to taking the test—that his lawyer be consulted—is relevant to his refusing to take the test.

The jury could have considered the appellant's request to be incriminating beyond the police registering it as a refusal. It could have reflected an awareness of his

intoxication such that he needed to consult with his lawyer about whether it would have been wiser for him to take to the test and let his lawyer cross-examine the results, or to have refused it and taken the refusal to the jury. The State replies that his request actually was exculpatory because it showed that he had control of his mental faculties to a degree that permitted him to ask for his attorney. But we have held that a defendant's "ineffectual requests for counsel ha[ve] no probative value and should not [be] admitted under Rule 402."[6] "Consequently, the reason one refuses to submit to a breath test is irrelevant and inadmissible as a part of the State's case."[7] We have found such a request in a similar situation apt to "be construed adversely to a defendant and may improperly be considered as an inference of guilt."[8] Its introduction in the appellant's case, therefore, did not serve the truth-seeking function of the trial. The State consequently had little interest in introducing only the appellant's request for his lawyer.

The appellant's request for an attorney, however, was cloaked around his refusal to take the blood-alcohol test, which has statutorily-mandated probative value, as did his speech pattern if it was impaired. He never explicitly refused to take the test because he preconditioned his acquies-

---

2. *See* Tex.R. Evid. 402 ("All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority").

3. Tex. Pen.Code § 49.01(2)(A).

4. *See Jones v. State,* 795 S.W.2d 171, 175 (Tex.Cr.App.1990) (holding that the quality of a suspect's speech can be evidence of intoxication).

5. *See* Tex. Transp. Code § 724.015 (warning that "if the person refuses to submit to the

taking of the specimen, that refusal may be admissible in a subsequent prosecution"); *Erdman v. State,* 861 S.W.2d 890, 893 (Tex. Cr.App.1993) (holding that police must warn D.W.I. suspects correctly about the statutory consequences of refusal before introducing that refusal as evidence of intoxication).

6. *Hardie v. State,* 807 S.W.2d 319, 321 (Tex. Cr.App.1991).

7. *Jamail v. State,* 787 S.W.2d 380, 383 (Tex. Cr.App.1990).

8. *Hardie,* 807 S.W.2d at 322.

cence to the test on first speaking with his attorney. Thus the appellant's refusal had probative value independent of his request for an attorney, although the request for an attorney alone was irrelevant to his guilt.

The State never argued at trial that the appellant was guilty because he requested an attorney.[9] Instead it introduced his request as an indication of his intoxication independent of his request.

### III. The Appellant's Grounds

The appellant asks us to hold that the introduction of this relevant evidence was reversible error because it infringed on his federal constitutional rights to have the assistance of counsel, to be afforded due process of law, and to be free from compulsion to be a witness against himself.

■ The appellant also objected at trial that his state constitutional rights under Texas Constitution article 1, section 10 were violated by the admission of his request for an attorney. The only case that he cites that addresses the state-constitution claim expressly held that the protections of Texas Constitution article 1, section 10 are no broader than those found in the federal constitution.[10] The appellant has not argued here that the Texas Constitution should be interpreted differently from its federal counterpart. We shall not consider the application of the Texas Constitution to this case.[11]

### III. Rights to Counsel

■ The admission of the appellant's request for an attorney did not infringe on his federal constitutional rights to counsel. Rights to counsel are recognized in the Fifth Amendment, which protects a person from governmental compulsion to be a witness against himself, and in the Sixth Amendment, which provides a defendant a right to assistance of counsel in a criminal prosecution. We hold that, when the appellant requested his attorney, the State had not proceeded far enough in its investigation or prosecution of him to implicate such rights.

### A. Fifth Amendment

The appellant's Fifth Amendment right to counsel was not implicated because he was not subjected to custodial interrogation. The Fifth Amendment limitations on interrogation have been announced in court decisions beginning with *Miranda v. Arizona*, in which the Court held, "The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today."[12]

■ The Court's decisions go on to say, "It is the premise of *Miranda* that the

---

9. The State mentioned his request for an attorney in closing argument, but before any argument could have been made concerning that point, the appellant objected and his objection was sustained. He made no further request to the court for an instruction to disregard the mention of the fact of the refusal.

10. *Miffleton v. State*, 777 S.W.2d 76, 80–81 (Tex.Cr.App.1989) (holding that Tex. Const.

art. 1, sec. 10 only applies to testimonial compulsion).

11. *See Heitman v. State*, 815 S.W.2d 681, 690–691 n. 23 (Tex.Cr.App.1991) (explaining that state and federal constitutional claims should be argued in separate grounds providing a separate substantive analysis or argument for each ground).

12. *Miranda*, 384 U.S. 436, 469, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

danger of coercion results from the interaction of custody and official interrogation." [13] "It is clear therefore that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." [14] Therefore there is no Fifth Amendment right to counsel if there is no interrogation.

▬ Questions normally accompanying the processing of a D.W.I. arrestee do not constitute interrogation.[15] In particular, the admission into evidence of a defendant's refusal to submit to a blood-alcohol test does not offend the Fifth Amendment right against self-incrimination.

*Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), held that a State could force a defendant to submit to a blood-alcohol test without violating the defendant's Fifth Amendment right against self-incrimination. We now address a question left open in *Schmerber, id.,* at 765, 86 S.Ct. 1826, and hold that the admission into evidence of a defendant's refusal to submit to such a test likewise does not offend the right against self-incrimination.[16]

. . .

In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.* As we stated in *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), police words or actions "normally attendant to arrest and custody" do not constitute interrogation. The police inquiry here is highly regulated by state law, and is presented in virtually the same words to all suspects. It is similar to a police request to submit to fingerprinting or photography. Respondent's choice of refusal thus enjoys no prophylactic *Miranda* protection outside the basic Fifth Amendment protection.[17]

Since the appellant's statements in this case were not produced by custodial interrogation, the appellant had no Fifth Amendment right to counsel.

### B. Sixth Amendment

▬ As for the appellant's Sixth Amendment right to counsel, it had not yet attached. The Right to Counsel Clause of the Sixth Amendment to the United States Constitution ("In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defence") protects an accused's right to counsel "only at or after the time that adversary judicial proceedings have been initiated, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." [18] A person

---

13. *Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990).

14. *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

15. *See McCambridge v. State,* 712 S.W.2d 499, 504 (Tex.Cr.App.1986).

16. *South Dakota v. Neville,* 459 U.S. 553, 554, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

17. *Id.* at 564 n. 15, 103 S.Ct. 916. *Accord McGinty v. State,* 723 S.W.2d 719, 721 (Tex. Cr.App.1986) (also holding that the refusal to submit to the breathalyzer test did not result from a custodial interrogation for purposes of TEX.CODE CRIM. PROC. art. 38.22).

18. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality op.). *Accord Michigan v. Jackson,* 475 U.S. 625, 629 n. 3, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

has not become an "accused" within the meaning of the Sixth Amendment simply because he has been detained by the government with the intention of filing charges against him.[19]

■ Administering a breath-alcohol test to an arrestee after he has made a request for, but not received, the advice of counsel does not violate the Sixth Amendment right to counsel when a formal adversary proceeding has not yet been initiated, because the right has not attached.[20] In this case, formal adversary judicial proceedings had not started because the State had not filed any charges against the appellant. Therefore the appellant's Sixth Amendment right to counsel had not yet attached.

## IV. Due Process

The appellant relies on a sentence from our opinion in *Hardie v.. State* as authority for the proposition that any invocation of the right to counsel is inadmissible as evidence of guilt: "We therefore hold that evidence of one's invocation of the right to counsel is inadmissible as evidence of guilt ...." [21] The appellant's argument takes the statement out of its context, in which the invocation of counsel came after the defendant received *Miranda* warnings.

In *Doyle v. Ohio* the Supreme Court held that it is a denial of due process for officials to tell a defendant, even erroneously, that he has the right to remain silent and to speak to an attorney, and then to use the resultant silence or request for an attorney as substantive evidence against him.[22] The Court explained:

Silence in the wake of the [*Miranda*] warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. *See United States v. Hale,* 422 U.S. [171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) ], at 177. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. Mr. Justice White, concurring in the judgment in *United States v. Hale, supra,* at 182–183, put it very well:

(W)hen a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.... Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from *Mi-*

---

**19.** *See United States v. Gouveia,* 467 U.S. 180, 187–90, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984).

**20.** *See Forte v. State,* 707 S.W.2d 89, 91–92 (Tex.Cr.App.1986).

**21.** 807 S.W.2d at 322.

**22.** 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

*randa* warnings that this would not be the case.[23]

■ The Court's concern in *Doyle* is that a suspect not be treated like the child in the old story, who was on a high branch of a tree when the child's parent said, "Jump into my arms. Don't be afraid; I'll catch you." But when the child jumped, the parent stepped aside, and the child crashed to the ground. The parent said, "Now remember: You can't trust anyone." The guaranty of fundamental fairness in the Due Process Clause forbids the government from making the *Miranda* promises and breaking them by using a suspect's exercise of a right as evidence against him.

The Court has underlined the distinction between *Doyle* and cases in which no *Miranda* warnings had been given. In *Fletcher v. Weir*, the Court said:

> The significant difference between the present case and *Doyle* is that the record does not indicate that respondent Weir received any *Miranda* warnings during the period in which he remained silent immediately after his arrest. The majority of the Court of Appeals recognized the difference, but sought to extend *Doyle* to cover Weir's situation by stating that "(we) think an arrest, by itself, is governmental action which implicitly induces a defendant to remain silent." 658 F.2d, at 1131. We think that this broadening of *Doyle* is unsupported by the reasoning of that case and contrary to our post-*Doyle* decisions. . . .

> In . . . post-*Doyle* cases, we have consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him. In *Roberts v. United*

*States*, 445 U.S. 552, 561, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980), we observed that the post-conviction, presentencing silence of the defendant did not resemble "postarrest silence that may be induced by the assurances contained in *Miranda* warnings." In *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (U.S.Mich.1980), we noted that the failure to speak involved in that case occurred before the defendant was taken into custody and was given his *Miranda* warnings, commenting that no governmental action induced the defendant to remain silent before his arrest. 447 U.S. at 239–40, 100 S.Ct. 2124. Finally, in *Anderson v. Charles*, 447 U.S. 404, 407–408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), we explained that use of silence for impeachment was fundamentally unfair in *Doyle* because "*Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him. ... *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances."

In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to post-arrest silence when a defendant chooses to take the stand.[24]

■ In our case, the cause of the Court's due-process concerns is not present; no *Miranda* warnings had been given when the appellant was asked whether he would take the breath-alcohol test, and no promise was broken.

---

**23.** *Doyle*, 426 U.S. at 617–19, 96 S.Ct. 2240 (footnotes omitted).

**24.** *Fletcher*, 455 U.S. 603, 605–07, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam).

This Court followed *Doyle* in *Hardie v. State.*[25] Hardie's request for an attorney, which was made before refusing the breath test and after receiving *Miranda* warnings, was admitted in evidence at his DWI trial. Although there was no right to an attorney before deciding whether to take the breath test and a request for an attorney was not a basis for suppressing a refusal to take a blood-alcohol test,[26] we held that letting the jury hear the post-*Miranda* request for counsel denied due process:

> Such adverse use of evidence that a defendant invoked a right or privilege which has been granted him, is constitutionally impermissible. See *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (denial of due process to use defendant's post-arrest, post-*Miranda* silence for impeachment purposes). This is true even though the right or privilege was erroneously extended to a defendant, because the requirements of a fair trial make it impermissible to tell a defendant that he has a right, even if erroneously, and then use his exercise of that right against him. *Doyle, id.* 426 U.S. at 618 n. 9, 96 S.Ct. 2240. We therefore hold that evidence of one's invocation of the right to counsel is inadmissible as evidence of guilt ....[27]

The appellant seizes on the last sentence quoted above as authority for the proposition that every invocation of the right to counsel is inadmissible as evidence of guilt. This ignores the context in which we made the statement, which was an affirmation of *Doyle* and its reasoning.

In *Hardie*, we also stated that we "believe that evidence of an accused invoking his right to counsel may indeed be construed adversely to a defendant and may be improperly be considered as an inference of guilt."[28] This is true, if such evidence is inadmissible. Again the context is essential. The statement was made to "disapprove" *dicta* in a previous opinion in which the Court said that even when such evidence was inadmissible the admission of it would be harmless because, "Human nature and experience do not compel the conclusion that evidence of one requesting the assistance of counsel when confronted with allegations of moral and/or legal improprieties inexorably create [*sic* ] an inference of guilt."[29] In *Hardie* we held that there was no *per se* rule of harmlessness for such an error.

*Hardie*, like *Doyle*, held that it is constitutionally impermissible to erroneously tell a defendant that he has a right, and then use his exercise of that right against him. Those decisions left open the question whether it was federal constitutional error to admit a defendant's request for an attorney when he was not erroneously told that he had the right to counsel before taking a blood-alcohol test. In the appellant's case, he was repeatedly informed that he did *not* have the right to an attorney before taking the blood-alcohol test. When the appellant refused to submit to the breath test, as he acknowledges, he had no statutory or constitutional right to consult counsel regarding the test. Nor were his due-process rights violated by the admission of his request because it was not the result of state-sanctioned assurances of individual rights. *Hardie*, therefore, is no

**25.** 807 S.W.2d at 321.

**26.** *See Jamail,* 787 S.W.2d 380 (holding that the refusal to submit to a breath test is admissible regardless of the reason for refusal).

**27.** *Hardie,* 807 S.W.2d at 322.

**28.** *Ibid.*

**29.** *Jamail,* 787 S.W.2d at 383.

authority for the argument that the appellant's right to due process was violated.

## V. Self-incrimination violation

■ The appellant argues that playing the recording of his request for a lawyer improperly permitted the jury to infer his guilt from that request. He claims that this inference violated his Fifth Amendment protection against compulsion to be a witness against himself.

### A.

The appellant's request for an attorney was made after he was in custody but before he was given any *Miranda* warnings, interrogated, or charged with an offense. In such circumstances his answers to direct questions are not rendered inadmissible by the Self-incrimination Clause of the Fifth Amendment merely because the slurred nature of his speech was incriminating.[30] Nor, as we have held above, did that clause give him a right to counsel at that time.

There is some authority to interpret a request for an attorney as a request to remain silent that implicates the Self-incrimination Clause of the Fifth Amendment. In *Wainwright v. Greenfield*, the Supreme Court noted, "With respect to post-*Miranda* warnings 'silence,' we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent as well as of a desire to remain silent until an attorney has been consulted."[31] From this, one court

of appeals has concluded, when a suspect answered a police officer's pre-arrest question by saying, "Talk to my lawyer," "Although [the suspect's] statement referred not to silence but to his right to an attorney, the admissibility of the statement is properly analyzed as a comment on pre-arrest silence. [The suspect's] statement is best understood as communicating a desire to remain silent outside the presence of an attorney."[32]

On the facts of this case, the appellant's expression of a desire to talk with an attorney cannot be construed as a desire to remain silent. His request was expressly and repeatedly limited to his decision whether to take the breath-alcohol test. He stated that he was not refusing to take the test, and he told the officers that he only wanted to speak with his attorney to help him make that decision. He repeated this response after the officers told him that he could not speak with his attorney before making that decision. Even after the officers told him that his continued insistence on speaking with his attorney would be taken by them to be a refusal to take the test, he reiterated his desire to speak with his attorney. And after he was given his *Miranda* warnings, he waived his right to silence and answered the officers' questions about his actions that night. The appellant's statements cannot be interpreted as expressing a desire to remain silent. Therefore we do not need to address whether the Fifth Amendment is violated by the use of pre-arrest silence[33]

---

**30.** *See Muniz,* 496 U.S. at 592, 110 S.Ct. 2638 (holding that any slurring of speech or other evidence of lack of muscular coordination by a suspect is not protected by the Fifth Amendment).

**31.** *Greenfield,* 474 U.S. 284, 295 n. 13, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986).

**32.** *Combs v. Coyle,* 205 F.3d 269, 279 (6th Cir.), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000).

**33.** *Compare Coppola v. Powell,* 878 F.2d 1562 (1st Cir.1989); *Combs,* 205 F.3d at 279; *Savory v. Lane,* 832 F.2d 1011 (7th Cir.1987); *United States v. Burson,* 952 F.2d 1196 (10th Cir.1991); *United States v. Moore,* 104 F.3d 377, 384–89 (D.C.Cir.1997) (holding that evi-

or post-arrest, pre-*Miranda* silence.[34]

## B.

██ What remains is the appellant's claim that his right to be free from compelled self-incrimination was violated by showing the jury that he desired to consult with his attorney before taking the test. He argues that an inference of guilt, beyond that emanating from its being taken as a refusal, was improperly permitted by introducing his request.

Because the blood-alcohol test itself does not violate the Fifth Amendment, it does not matter whether the suspect is forced to "reveal, directly or indirectly, his knowledge of facts relating him to the offense,"[35] by either a direct refusal or a refusal phrased as a request for an attorney. That is the point of the test to begin with.

The Supreme Court has recognized that a suspect's refusal to take a blood-alcohol test may be phrased so as to be incriminating beyond that stemming from the refusal to take the test. In *Neville* the Court provided a "difficult gradation" of hypothetical cases from an innocuous shake of the head with no other incriminating component to a situation where the suspect actually admits his guilt while refusing to take the test.[36] The Court stated that "no impermissible coercion is involved when the suspect refuses to take the test, regardless of the form of the refusal...."[37]

The appellant was not compelled by the officers to request his attorney before answering whether he would take the test. Although his request had testimonial value, the appellant was not coerced into requesting his attorney. The Fifth Amendment only protects against compelled self-incrimination, and therefore the appellant's right not to incriminate himself was not violated.

The judgment of the Second Court of Appeals is affirmed.

JOHNSON, J., dissented without opinion.

---

dentiary use of pre-arrest silence violates the Fifth Amendment) *with United States v. Rivera,* 944 F.2d 1563, 1568 (11th Cir.1991); *United States v. Oplinger,* 150 F.3d 1061, 1066–67 (9th Cir.1998) (permitting evidentiary use of pre-arrest silence).

**34.** *Compare United States v. Whitehead,* 200 F.3d 634, 638–39 (9th Cir.2000) (holding that the privilege against self-incrimination is "plainly infringed" by the government using a defendant's post-arrest, pre-*Miranda* silence as evidence of guilt); *with Rivera,* 944 F.2d at 1568 (holding that evidentiary use of post-arrest, pre-*Miranda* silence is constitutional).

**35.** *Muniz,* 496 U.S. at 595, 110 S.Ct.2638.

**36.** *Neville,* 459 U.S. at 561–62, 103 S.Ct. 916.

**37.** *Id.* at 562, 103 S.Ct. 916. The Court declined to decide whether the additional incriminating component in their problematic example would have been properly excluded if it was possible to do so. *Id.* at 563, 103 S.Ct. 916. ("We prefer ... to draw possible distinctions where necessary for decision in other circumstances.")