In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-507 CR


____________________



JUSTIN AMADOR, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law No. 1


Montgomery County, Texas


Trial Cause No. 03-186535






OPINION


 This cause is before us on remand from the Court of Criminal Appeals. See Amador
v. State, 221 S.W.3d 666, 667-68 ( Tex. Crim. App. 2007). Justin Amador pled guilty to
misdemeanor DWI after the trial court denied his motion to suppress evidence. Amador v. 
State, 187 S.W.3d 543, 545 (Tex. App.-Beaumont 2006), rev'd, 221 S.W.3d 666 (Tex. Crim.
App. 2007); see Tex. Pen. Code Ann. § 49.04(b) (Vernon 2003). The trial court sentenced
Amador to 180 days in the county jail, suspended the sentence, and placed him on community
supervision for one year. See Tex. Pen. Code Ann. § 12.22 (Vernon 2003). Amador
appealed the trial court's ruling on his suppression motion, and this court affirmed. Amador,
187 S.W.3d at 550. On remand, we reconsider Amador's arguments that the trial court erred
in denying his motion to suppress. (1) We find the evidence from the suppression hearing
insufficient to support a finding of probable cause, and therefore hold the trial court should
have granted Amador's motion. Accordingly, we reverse the trial court's judgment and
remand the case for a new trial.

BACKGROUND


 Department of Public Safety ("DPS") Trooper Angela Fountain stopped Amador for
speeding early in the morning of June 3, 2003. Amador concedes that the trooper properly
stopped him for speeding, but contends that the stop lasted longer than necessary to achieve
its purpose. He further contends that the State failed to prove probable cause to support his
arrest. 

 At the suppression hearing, Trooper Fountain testified about her interaction with
Amador immediately following the traffic stop. The trial court viewed portions of the
videotape of the stop during the hearing. During their initial conversation, Trooper Fountain
observed that Amador's speech was "mumbled." The videotape of this portion of the stop
reflects that he possibly mumbled only his current address. After asking for Amador's
license and insurance, Trooper Fountain noticed that he was "extremely slow to respond" and
"fumbled through and passed over his driver's license on more than one occasion." How
Amador retrieved his license is not evident in the videotape. But, the trooper also testified
that Amador did not slur his speech.

 After determining that Amador had no outstanding warrants, Trooper Fountain asked
him to step out of his car. Trooper Fountain testified that Amador exited more slowly than
normal, but that he did not stumble, stagger, or lean on his car for support. The videotape
shows a slight delay between the time that Amador opened his door and exited his car. While
issuing Amador a warning for speeding, the trooper smelled alcohol on his breath. The
videotape depicts Trooper Fountain's inquiry about whether Amador had anything to drink,
and his response, in which he denied drinking any alcohol-containing beverage.

 Because of Amador's mumbled speech, his slowness in getting his license, and the
smell of alcohol on his breath, the trooper decided to perform standardized field sobriety
tests. Based on Amador's performance on the horizontal-gaze-nystagmus, the walk-and-turn,
and the one-leg-stand, Trooper Fountain arrested Amador for driving while intoxicated. 
Trooper Fountain did not further explain how Amador failed to pass his field sobriety tests
or explain the clues from the field sobriety testing that caused her to arrest Amador for DWI. 
The videotape shown to the trial court did not depict the field sobriety tests. Instead, the
videotape ends shortly after Amador signed the warning for speeding issued by Trooper
Fountain.

 Amador raises two appellate issues. First, he contends that his detention to investigate
whether he was driving under the influence of alcohol was illegal. Second, he contends the
State failed to show there was probable cause to arrest him for driving under the influence. 
STANDARD OF REVIEW


 This Court reviews a trial court's ruling on a motion to suppress for an abuse of
discretion. Dyar v. State, 125 S.W.3d 460, 462 (Tex. Crim. App. 2003). We give almost
total deference to the trial court's determination of historical facts, while conducting a de
novo review of the trial court's application of the law to those facts. State v. Ross, 32 S.W.3d
853, 856 (Tex. Crim. App. 2000). When, as here, the trial court does not file findings of fact
and conclusions of law, "we view the evidence in the light most favorable to the trial court's
ruling and assume that the trial court made implicit findings of fact that support its ruling as
long as those findings are supported by the record." Id. at 855. As the sole trier of fact at the
suppression hearing, the trial judge "evaluates witness testimony and credibility." Torres v.
State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005) (citing Maxwell v. State, 73 S.W.3d 278,
281 (Tex. Crim. App. 2002)).

 When the defendant shows that a search or seizure occurred without a warrant, "the
burden shifts to the state to prove the reasonableness" of the warrantless search or seizure. 
Id. Whether probable cause to arrest is then sufficient depends upon the "totality of the
circumstances." Id. (citing Amores v. State, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991)). 
"[P]robable cause must be based on facts, not opinions." Id.; see also Ford v. State, 158
S.W.3d 488, 493-94 (Tex. Crim. App. 2005). The Ford Court explained that "[m]ere
opinions are ineffective substitutes for specific, articulable facts. . . ." Ford, 158 S.W.3d at
493. The Court further stated that reliance on a police officer's special training is
"insufficient to establish reasonable suspicion absent objective factual support." Id. at 494.

APPLICATION OF LAW TO FACTS


A. Scope of Detention 

 In issue one, Amador argues that the scope of his detention exceeded the justification
for his initial stop. Amador argues that once Trooper Fountain issued a warning for
speeding, she had no reason to expand her investigation into whether he was driving while
intoxicated. 

 Amador, however, ignores several facts. Trooper Fountain noted Amador's difficulty
in complying promptly to her ordinary requests for license and insurance information and his
unusually slow movement when exiting his vehicle. Also, the tape of the stop indicates that
Trooper Fountain smelled signs of an alcoholic beverage on Amador's breath after she issued
the warning, and that she asked Amador how much alcohol he had to drink. Amador denied
having had any alcohol, which was inconsistent with Trooper Fountain's impression. Under
these circumstances, we conclude that the detention was not unduly prolonged by Trooper
Fountain's decision to conduct field sobriety tests. 

 The cases upon which Amador relies to establish an unreasonable detention are 
distinguishable. Amador cites Davis v. State, 947 S.W.2d 240 (Tex. Crim. App. 1997) for
the proposition that articulable facts must support a continued detention. The detainment in
Davis is factually distinguishable and was much more prolonged than Amador's. In Davis,
the police stopped a driver for suspicion of driving while intoxicated; however, they did not
smell alcohol on the driver and admitted that they ruled out DWI early in their investigation. 
Id. at 245. Nevertheless, after the officers' investigation revealed nothing to support DWI,
which was the purpose of their stop, they continued their investigation, interrogated the
driver and his passenger separately, performed background checks on both the driver and his
passenger, did a pat-down search of the driver, and held the car at the scene so a dog could
sniff it for the presence of narcotics. Id. at 241, 245. When the dog arrived, the dog alerted
on the car's trunk, and at that point the driver consented to the search of his trunk. Id. at 241. 
The police found a suitcase containing marihuana during their search of the car's trunk. Id. 
The Davis Court held the prolonged detention was unreasonable under those circumstances
because the negative results of the investigation did not justify it. Id. at 246.

 Here, the facts justified further investigation into Amador's sobriety, and comparable
delays do not exist. Trooper Fountain conducted the field sobriety tests on Amador after she
perceived that he had been drinking. Trooper Fountain's detection of alcohol on Amador's
breath, her prior observation of Amador's mumbled speech, and her impression of his
slowness in exiting his vehicle all arose as products of the stop. Unlike Davis, the products
of the trooper's investigation were not the result of a prolonged stop. Also, unlike Davis,
Trooper Fountain's investigation reasonably resulted from facts she observed after she
stopped Amador for speeding.

 Amador also relies on State v. Daly for the proposition that "the existence of
reasonable suspicion must precede a detention . . . ." 35 S.W.3d 237, 241 (Tex. App.-Austin
2000, no pet.). Daly is also distinguishable from this case. In Daly, the traffic-stop
investigation did not result in information justifying the officer's subsequent drug-possession
investigation. Id. at 239-40. Trooper Fountain, unlike the police officers in Daly, obtained
information that justified her decision to perform field sobriety tests. Another important
distinction is that in Daly, the trial judge granted the motion to suppress, and here the trial
judge denied the motion to suppress. Id. at 239. Thus, the presumptions on resolving fact
issues favored the defendant in Daly, but favor the State in the present case.

 Although the police cannot unduly prolong an investigation for a traffic violation, it
is also settled that an officer may make an arrest for other offenses discovered during the
investigation. Taylor v. State, 421 S.W.2d 403, 407 (Tex. Crim. App. 1967); Perales v.
State, 117 S.W.3d 434, 439 (Tex. App.-Corpus Christi 2003, pet. ref'd). After reviewing the
record of the suppression hearing, and the portions of the videotape contained in the record,
we find the State demonstrated facts to support a finding that Amador's detention for a field
sobriety test was reasonable. We overrule issue one. 


B. Probable Cause 

 In issue two, Amador asserts the State failed to meet its burden to show probable
cause justifying his arrest. The State contends that the record contains sufficient evidence
to support the trial court's denial of the motion to suppress.

 We examine the reasonableness of Amador's arrest, and specifically the existence of
probable cause, considering all the circumstances. See Terry v. Ohio, 392 U.S. 1, 21, 88
S.Ct. 1868, 20 L.Ed.2d 889 (1968); Hulit v. State, 982 S.W.2d 431, 435-36 (Tex. Crim. App.
1998). Probable cause requires that an officer have a reasonable belief, based on facts or
circumstances within the officer's personal knowledge, or based upon reasonably trustworthy
information, that an offense has been committed. See Torres, 182 S.W.3d at 901-02. 
Generally, appellate courts afford almost total deference to a trial court's determination of
the historical facts supported by the record. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). A videotape of a stop involving a charge for driving while intoxicated that
depicts the driver's impairment would be relevant to the issue of intoxication. See Miffleton
v. State, 777 S.W.2d 76, 80 (Tex. Crim. App. 1989) (finding that videotape compelling a
DWI suspect to perform sobriety tests was admissible). In this case, Amador's attorney
introduced the videotape; so no one questions whether portions of the tape depict custodial
interrogations. Evidence introduced in a DWI trial is not necessarily limited to oral
testimony, but in appropriate cases may include relevant photographs or videotapes. See
Tex. R. Evid. 401, 1001; Griffith v. State, 55 S.W.3d 598, 600-01 (Tex. Crim. App. 2001)
(finding that audio portions of videotape circumstantially relevant because any signs of
impairment in speech are relevant to definition of intoxication); Jones v. State, 795 S.W.2d
171, 175-76 (Tex. Crim. App. 1990) (finding that audio portions of videotape may be
admitted where questioning did not call for testimonial responses); Smith v. State, 105
S.W.3d 203, 207 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd) (finding that audio
portions of video are relevant to issue of intoxication because the impairment in one's ability
to speak is relevant to whether one was driving while intoxicated). 

 At the suppression hearing, the trial court heard the testimony of Trooper Fountain
and viewed a portion of the videotape. The videotape viewed by the court depicts the stop,
but does not include the field sobriety test. We have reviewed the pertinent portion of the
videotape, and find that Amador's behavior depicted in it is insufficient to demonstrate
probable cause for Amador's arrest. 

 Thus, the issue in this case becomes whether the State met its burden of proof through
Trooper Fountain's testimony about Amador's field sobriety test. First, we observe that
Trooper Fountain testified that while writing Amador a warning for speeding, she had no
intention to arrest him. She testified that nothing in the manner that Amador pulled his car
over indicated that he had lost the use of his mental or physical faculties, and that nothing
about his driving indicated that he was intoxicated. The sole reason for her decision to stop
Amador was that he was speeding.

 Upon issuing the warning, the videotape reflects that Trooper Fountain smelled
alcohol on Amador's breath, and in response to Trooper Fountain's question about drinking,
Amador denied drinking beverages containing alcohol. However, Trooper Fountain did not
arrest Amador for having alcohol on his breath, as Trooper Fountain's testimony reflects that
she agreed that an odor of alcohol is not indicative of intoxication. As pointed out by our
sister court of appeals:

 so long as consumption of alcohol is not illegal in and of itself, a standard
permitting or requiring detention and investigation of persons for public
intoxication based solely on whether the odor of alcohol on a person's breath
is "strong," "moderate," "weak" or some other such subjective classification
invites unwarranted police intrusions into the affairs and freedom of persons. 
 

Domingo v. State, 82 S.W.3d 617, 622 (Tex. App.-Amarillo 2002, no pet.). 

 While we hold that Trooper Fountain had sufficient grounds to detain and extend her
investigation into whether Amador was driving under the influence of alcohol, proving
probable cause requires more. With respect to probable cause, the Court of Criminal Appeals
has stated:

 Probable cause exists where the police have reasonably trustworthy
information, considered as a whole, sufficient to warrant a reasonable person
to believe a particular person has committed or is committing an offense. 
Guzman v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997); Amores v. State,
816 S.W.2d [407, 413 (Tex. Crim. App. 1991)]. Probable cause requires more
than mere suspicion but far less evidence than that needed to support a
conviction or even that needed to support a finding by a preponderance of the
evidence. Guzman v. State, 955 S.W.2d at 87. 


Hughes v. State, 24 S.W.3d 833, 838-39 (Tex. Crim. App. 2000). More recently, the Court
of Criminal Appeals stated that "probable cause is the accumulation of facts which, when
viewed in their totality, would lead a reasonable police officer to conclude, with a fair
probability, that a crime has been committed or is being committed by someone." Parker v.
State, 206 S.W.3d 593, 599 (Tex. Crim. App. 2006).

 No relevant facts concerning Amador's performance on the field sobriety tests were
elicited at the hearing. Trooper Fountain's complete description of Amador's field sobriety
testing consisted of the following:

 Q. [Prosecutor] Based on those three things, the mumbled speech, the
slowness at getting the license and the alcohol, what did
you decide to do?


 A. I felt I needed to investigate further by performing
standardized field sobriety tests.


 Q. [Prosecutor] And did you perform those tests?

 A. Yes, ma'am, I did.

 Q. [Prosecutor] What tests did you have him do?

 A. Did the horizontal gaze nystagmus, the walk and turn and
the one-leg stand.


 Q. [Prosecutor] And on the basis of all of those tests and how the
defendant performed, what did you decide to do?


 A. I placed him under arrest for driving while intoxicated. 


At that point, the prosecutor advised the court that it had "Nothing further, Your Honor." 
Likewise, Amador's attorney also offered no additional evidence.

 Trooper Fountain did not expressly testify that Amador failed the field sobriety test. 
The State argues that we should infer that he failed the tests from Trooper Fountain's
statement that she decided to arrest Amador for DWI. But, to do so would require that we
speculate that the field sobriety test revealed clues that tended to show that Amador was
intoxicated. We decline to do so. 

 The testimony elicited by the parties at the hearing fails to demonstrate that Trooper
Fountain had reasonable facts to support her decision to arrest Amador. (2) Determining
whether a reasonable police officer would conclude that Amador was intoxicated would
likely require the trooper to articulate at least some of the relevant details about Amador's
performance on the field sobriety test. 

 Requiring the State to spend the time to develop a record sufficient to meet its burden
of showing probable cause in a warrantless arrest is not a waste of judicial resources or time
spent on a foregone conclusion, as the State suggests. (3) We conclude that the record from
Amador's suppression hearing does not contain sufficient facts to demonstrate probable
cause for his warrantless arrest. This record contains neither the trooper's statement of an
opinion that Amador failed the field sobriety tests, nor articulable facts to demonstrate how,
in the officer's judgment, the driver failed the test. In our opinion, the record must contain
such facts to sustain the State's burden when the defendant's arrest was made without a
warrant. 

 Because the record contains insufficient evidence to demonstrate probable cause, 
Amador's warrantless arrest was illegal, making any evidence obtained thereby inadmissible. 
See Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005). We sustain issue two. We
hold that the trial court erred in denying Amador's motion to suppress, reverse the judgment,
and remand the case to the trial court for further proceedings consistent with this opinion.

 REVERSED AND REMANDED.



 ____________________________

 HOLLIS HORTON

 Justice

 


Submitted on September 28, 2007

Opinion Delivered December 12, 2007 

Publish


Before McKeithen, C.J., Kreger and Horton, JJ.

1. In the initial appeal, we held that we were required to presume that the videotape
shown to the trial court during the hearing supported the trial court's ruling because the trial
court saw the videotape during the hearing but the tape was not admitted into evidence. 
Amador v. State, 187 S.W.3d 543, 549 (Tex. App.-Beaumont 2006, rev'd, 221 S.W.3d 666
(Tex. Crim. App. 2007). The Court of Criminal Appeals reversed our decision, and
required the trial judge to identify for the record the portions of the videotape viewed at the
hearing. Amador v. State, 221 S.W.3d 666, 668-69 (Tex. Crim. App. 2007). Subsequently, 
the trial court identified an approximate five minute portion of the videotape played during
the hearing, and the parties supplemented the appellate record with this portion of the
videotape. 
2. We find nothing in this record that would have prevented the parties from introducing
the entire videotape that may have shown the field sobriety tests, or from examining Trooper
Fountain further in order to explain how Amador performed on his field sobriety test.
3. In its amended brief, the State argues that further detail is "unnecessary" because
requiring it would "prolong hearings on motions to suppress to address matters that are of
a foregone conclusion and to waste the [scarce] judicial resources of the district and county
courts and the time of our law enforcement officers."