

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00319-CR

CARTER COMPTON, II                                      APPELLANT

V.

THE STATE OF TEXAS                                         STATE

----------

## FROM THE 16TH DISTRICT COURT OF DENTON COUNTY
## TRIAL COURT NO. F-2013-1350-A

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Carter Compton, II of driving while intoxicated (DWI) and assessed his punishment at 3.75 years' confinement. In two issues, Compton argues that the evidence is insufficient to support his conviction and that the trial court erred by admitting certain evidence. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Prior to 2012, Compton was convicted of DWI on two other occasions, once in Texas and once in Oregon. On September 9, 2012, at approximately 1:00 a.m., a Justin police officer pulled over Compton after noticing that his vehicle had no visible taillights. When the officer approached the driver's side window, he noticed that Compton's eyes were red and glassy, that his speech was slurred, and that the car smelled strongly of alcohol. The officer also noticed a stain on Compton's pants where he had urinated on himself. The officer asked Compton to exit the vehicle and perform a variety of standardized field sobriety tests. Compton showed six clues for the horizontal gaze nystagmus test, four clues for the walk-and-turn test, and one clue for the one-leg stand test.

The officer also performed two nonstandardized tests on Compton to further gauge his intoxication level. The officer asked Compton to count down from sixty-seven to forty-five; Compton was unable to perform this task as requested. When asked how much alcohol he had consumed, Compton said that he had consumed three twenty-four-ounce beers earlier that night. Additionally, when asked how intoxicated he felt on a scale of zero to ten, Compton responded with a three, indicating that "he felt there was some type of impairment from alcohol." Finally, when the officer asked Compton to recite part of the alphabet, Compton did not do so, and the officer placed him under arrest.

The officer then proceeded to read Compton a statutory warning for refusal and requested a sample of his blood or breath. Compton refused and immediately asked to speak to his lawyer. After Compton invoked his right to counsel, the officer did not ask Compton any additional questions. On the way to the police station, Compton continued questioning and making statements to the officer; however, the officer only responded four times—to inform Compton of his name, to tell Compton that he failed the standardized field sobriety tests, to tell Compton that he would go before a judge, and to tell Compton that he received information regarding one prior conviction—all in response to questions by Compton. At trial, the State used Compton's two prior DWI convictions to prove the enhancement paragraphs as alleged in the indictment.

### III. OREGON DWI CONVICTION

In his first issue, Compton argues that the Oregon judgment was insufficient to prove beyond a reasonable doubt the existence of Compton's Oregon DWI conviction.

#### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

## B.    Enhancement of Conviction for DWI

DWI becomes a third-degree felony when it is shown on the trial of the offense that the defendant has been convicted twice before of any other offense relating to the operation of a motor vehicle while intoxicated.  Tex. Penal Code Ann. § 49.09(b)(2) (West 2014).    When proof of a prior conviction is a jurisdictional element, the existence of the prior conviction and the identity of the accused must be proven beyond a reasonable doubt.  *See Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *Zimmer v. State*, 989 S.W.2d 48, 50 (Tex. App.—San Antonio 1998, pet. ref'd); *Maibauer v. State*, 968 S.W.2d 502, 507 (Tex. App.—Waco 1998, pet. ref'd).

The jury considers the totality of the evidence to determine if the State proved both of these elements beyond a reasonable doubt.  *See Flowers*, 220 S.W.3d at 923.  No specific document or method of proof is required.  *See id.* at 921.  While a prior conviction alleged for enhancement may be established by certified copies of a judgment and sentence, a prior DWI accusation that has not resulted in a final conviction may not be used to elevate DWI to a felony offense. *See State v. Wilson*, 324 S.W.3d 595, 599 (Tex. Crim. App. 2010); *Zimmer*, 989 S.W.2d at 50.  Other accepted methods of proof include, but are not limited to: (1) the defendant's admission or stipulation, (2) testimony by a person who was

4

present when the defendant was previously convicted and can identify the defendant as that person, or (3) documentary proof that contains sufficient information to establish the defendant as the person previously convicted. *Zimmer*, 989 S.W.2d at 50; *see also Beck v. State*, 719 S.W.2d 205, 209 (Tex. Crim. App. 1986); *see also Littles v. State*, 726 S.W.2d 26, 31 (Tex. Crim. App. 1984).

To support a conviction of felony DWI by using foreign DWI convictions for enhancement, the State must prove the foreign DWI statute is essentially the same as the Texas statute. *See Langston v. State*, 776 S.W.2d 586, 587–88 (Tex. Crim. App. 1989). In the absence of such proof, the court is to presume that the foreign law is the same as that of the State of Texas. *Id.*

## C.  Proving Prior DWI Conviction

At trial, the State did not prove that the Oregon DWI statute was essentially the same as the Texas DWI statute.[2] For that reason, we will assess the sufficiency of the evidence in regards to the Oregon conviction in accordance with Texas law.

Compton argues that the DWI enhancement under section 49.09 of the Texas Penal Code requires proof of valid and final judgments of at least two prior DWI convictions. Appearing to rely on reasoning that first appeared in our

---

[2]The State introduced a copy of the Oregon statute as evidence, but it did not argue the similarities between the Oregon and Texas laws.

original opinion in *Gaddy v. State*, he contends that because the Oregon judgment fails to comply with some of the requirements of a valid judgment under article 42.01 of the Texas Code of Criminal Procedure, the State did not provide sufficient evidence to prove beyond a reasonable doubt the existence of that conviction. *See* No. 02-09-00347-CR, 2011 WL 1901972 (Tex. App.—Fort Worth May 19, 2011) (mem. op. on reh'g, not designated for publication), *vacated*, No. PD-1118-11, 2012 WL 4448757 (Tex. Crim. App. Sept. 26, 2012) (not designated for publication); *see also* Tex. Code Crim. Proc. Ann. art. 42.01 (West Supp. 2014). The court of criminal appeals vacated the original opinion in *Gaddy*. Therefore, it is no longer binding precedent of this court. Further, insofar as Compton relies upon the dissenting opinion to the en banc opinion on remand in *Gaddy*, we are not bound by any analysis contained therein either. *See Gaddy v. State*, 433 S.W.3d 128, 131–135 (Tex. App.—Fort Worth 2014, pet. ref'd) (Dauphinot, J., dissenting). Instead, we are bound by the decisions of the court of criminal appeals, which in *Flowers* confirmed that "Texas substantive law does not require that the fact of a prior conviction be proven in any specific manner." 220 S.W.3d at 922. Indeed,

> the important issue is not whether [the document] represents a judgment of conviction or its functional equivalent under article 42.01, but whether a reasonable trier of fact could view the State's Exhibits . . . and find beyond a reasonable doubt that 1) the alleged prior DWI conviction existed and 2) this conviction is linked to [the] appellant.

*Id.* at 924. Compton's argument has thus already been expressly foreclosed by the court of criminal appeals.

Moreover, courts have frequently upheld evidence as sufficient to establish the existence of a prior DWI conviction when a judgment has not met every requirement under section 42.01. *See Williamson v. State*, 46 S.W.3d 463, 466–67 (Tex. App.—Dallas 2001, no pet.) ("Even if all the procedural requirements of article 42.01 have not been met, as long as a judgment adjudicates the guilt of the defendant and assesses his punishment, it may be used under section 49.09(d) to elevate misdemeanor DWI to a felony offense."); *see also Collins v. State*, No. 06-13-00214-CR, 2014 WL 2447599, at *5 (Tex. App.—Texarkana May 30, 2014, pet. ref'd) (mem. op., not designated for publication) (judgment lacking attorney's name and fingerprint was deemed valid for purposes of DWI enhancement), *cert. denied*, 135 S. Ct. 2385 (2015); *Demers v. State*, No. 05-11-01704-CR, 2013 WL 323446, at *2 (Tex. App.—Dallas Jan. 29, 2013, no pet.) (not designated for publication) (totality of the evidence was sufficient to prove prior DWI conviction where judgment failed to find defendant guilty); *Gibson v. State*, No. 05-00-00671-CR, 2001 WL 221578, at *4 (Tex. App.—Dallas Mar. 7, 2001, no pet.) (mem. op., not designated for publication) (reasoning that probation order failing to indicate date of conviction was sufficient to prove prior conviction when viewed together with fingerprint evidence admitted by the State).

Here, the Oregon judgment sufficiently establishes the existence of the prior conviction because it is a certified document coming directly from the court in which it was rendered. *See Flowers*, 220 S.W.3d at 924 (holding that the State's exhibits were sufficient to prove the existence of the previous conviction because they came straight from "the custodian of the original judgment for the prior DWI conviction"). Furthermore, The Oregon judgment includes the names of the prosecutor and defense attorneys, the judge's signature and initials, and the date the document was filed. The State also provided additional evidence to show the existence of the prior Oregon conviction and link it to Compton. At trial, the State submitted a copy of Compton's driving record, which lists both of Compton's prior DWI convictions, and a motion to revoke, which mentions Compton's Oregon conviction as well. This differs from the supplemental materials provided by the State in *Gaddy*, which were so ambiguous that they could not help prove the existence and finality of the prior New Mexico convictions beyond a reasonable doubt. *See* 2011 WL 1901972, at *6 ("The documents mention traffic violations but are so deficient that we cannot tell what they are or what events they seek to memorialize, if, indeed, they do."). The additional evidence supplied by the State in the present case supplements the Oregon judgment by providing further proof that Compton was previously convicted of DWI in Oregon. *See Flowers*, 220 S.W.3d at 924–25; *Zimmer*, 989 S.W.2d at 51.

Viewing all the evidence in the light most favorable to the verdict, the jury could have reasonably determined that the State proved the existence of Compton's prior Oregon DWI conviction beyond a reasonable doubt.[3]  *See Flowers*, 220 S.W.3d at 921; *Zimmer*, 989 S.W.2d at 50; *Maibauer*, 968 S.W.2d at 507.  Therefore, we overrule Compton's first issue.

## IV.  ADMISSIBILITY OF EVIDENCE

In his second point, Compton argues that the trial court erred by admitting evidence of statements made by him after he requested to speak to an attorney. While he does not challenge the use of his refusal of a blood-alcohol test as evidence, he claims that any subsequent statements following this refusal were inadmissible under the Fifth and Sixth Amendments.

### A.    Standard of Review

The standard of review for a trial court's admission of evidence is abuse of discretion, and wide discretion is afforded to the trial judge.  *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997); *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992); *see also Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).  The trial court's decision should be reversed on appeal only if there is a showing of a clear abuse of discretion.  *See Theus*, 845 S.W.2d at 881; *Lajoie v. State*, 237 S.W.3d

---

[3]The State filed a motion for the court to take judicial notice regarding the Oregon DWI statute.  We deny the motion as moot because Compton's first issue is unpersuasive without even considering the Oregon statute.

345, 352 (Tex. App.—Fort Worth 2007, no pet.). In other words, only if the court's decision falls outside the "zone of reasonable disagreement," has it abused its discretion. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

### B. Admissibility under the Fifth Amendment

Compton argues that the statements he made while in custody were inadmissible under the Fifth Amendment because he had not yet been *Mirandized*. Assuming, without deciding, that this issue was preserved for appellate review, we cannot agree.

An individual's right to counsel is "recognized in the Fifth Amendment, which protects a person from governmental compulsion to be a witness against himself." *Griffith v. State*, 55 S.W.3d 598, 602–03 (Tex. Crim. App. 2001); *see Miranda v. Arizona*, 384 U.S. 436, 470, 86 S. Ct. 1602, 1626 (1966). "[T]he special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *See Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S. Ct. 1682, 1689 (1980). Custodial interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself" and generally encompasses express questioning by police or words or actions that the police should know are likely to elicit an incriminating response. *See id.* 466 U.S. at

10

300–01, 100 S. Ct. at 1689–90. For this reason, the Fifth Amendment right to counsel does not extend when there is no interrogation. *See Griffith*, 55 S.W.3d at 603. "Volunteered statements of any kind are not barred by the Fifth Amendment" and are admissible as evidence at trial. *Miranda*, 384 U.S. at 478, 86 S. Ct. at 1630. "Questions normally accompanying the processing of a D.W.I. arrestee do not constitute interrogation." *Griffith*, 55 S.W.3d at 603; *see McCambridge v. State*, 712 S.W.2d 499, 504 (Tex. Crim. App. 1986).

The Texas Code of Criminal Procedure expressly delineates the requirements of *Miranda* by requiring officers to inform people of their rights prior to custodial interrogation in order for resulting statements to be admissible. Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (West Supp. 2014). Further, article 38.22 does not preclude the admission of *res gestae* statements or statements made outside of custodial interrogation. *Id.* art. 38.22, § 5.

Compton contends that statements he made after invoking his right to counsel are inadmissible because he had been taken into custody and had not yet been *Mirandized*. His argument is without merit, however, because no custodial interrogation had occurred. *See Griffith*, 55 S.W.3d at 603 (stating that defendant's refusal to submit to blood-alcohol test and corresponding request for his attorney were admissible because at that point he did not have a Fifth Amendment right to counsel). In *Griffith*, the court determined the appellant's Fifth Amendment right to counsel had not been implicated when the trial court

11

admitted evidence of statements made by the appellant after he asked for an attorney. *Id.* at 602. While the appellant in *Griffith* was clearly in custody, no interrogation had occurred. *Id.* at 603. Likewise, here, Compton was not subject to custodial interrogation when the statements he is now contesting were made. He was in no way compelled to make these statements, nor were they a result of express questioning or acts or words the officer knew would be likely to elicit an incriminating response. *See Innis*, 446 U.S. at 300–01, 100 S. Ct. at 1689–90.

Further, even if Compton's Fifth Amendment right to counsel had been triggered when he initially asked for an attorney, his subsequent statements were voluntary and *res gestae*. As stated in *Miranda*, the Fifth Amendment does not protect those in custody against the use of statements made voluntarily. *See* 384 U.S. at 478, 86 S. Ct. at 1630. After refusing a blood-alcohol test and asking for an attorney, Compton continued to speak absent any invitation to do so. The officer refrained from speaking to Compton for the remainder of the video, except for four instances in which he responded to Compton's continuous questioning.

Moreover, the Texas Code of Criminal Procedure does not preclude the admission of *res gestae* statements or statements made outside of custodial interrogation. Tex. Code Crim. Proc. Ann. art. 38.22, § 5. As the State argues, "the statements fit the *res gestae* exception of article 38.22, section 5, as [Compton] was in 'the emotional grip' of the arrest." *See Graham v. State*, 486 S.W.2d 92, 94–95 (Tex. Crim. App. 1972) (reasoning that the exception applies

12

when there is an exciting, emotionally stimulating or physically painful event, the admission is made so soon after the event that the declarant is still in the emotional grip of it, and the admission relates to the event); *see also Gordon v. State*, 608 S.W.2d 638, 639 (Tex. Crim. App. [Panel Op.] 1980) (stating that article 38.22 expressly requires the "stimulating" event be the arrest or the offense). This exception applies here because Compton was arrested, he made the statements during the commission of that arrest, and those statements regarded his detainment. Accordingly, even if Compton had been entitled to his Fifth Amendment right to counsel, his statements would have remained admissible given their voluntary and *res gestae* nature. *See* Tex. Code Crim. Proc. Ann. art. 38.22, §§ 3, 5.

Compton additionally argues that the trial court's admission of these statements implicated his Fifth Amendment right against self-incrimination. In support of this contention, he cites to *Gathwright v. State*, in which this court held:

> It is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not use at trial the fact that he stood mute or claimed his privilege in the face of an accusation. To permit the use of such evidence for purposes of incrimination would erode the protection guaranteed by both state and federal constitutions.

698 S.W.2d 260, 261 (Tex. App.—Fort Worth 1985, no pet.) (citations omitted). However, in *Jones v. State*, the court of criminal appeals declined to follow this

13

reasoning and instead held "that audio tracks from DWI videotapes should not be suppressed unless the police conduct depicted expressly or impliedly calls for a testimonial response not normally incident to arrest and custody or is *conduct the police should know is reasonably likely to elicit such a response*." 795 S.W.2d 171, 176 (Tex. Crim. App. 1990). Like in *Jones,* the video of Compton's arrest and transport helped the State prove that Compton was in fact intoxicated. *See id.* at 175 ("[The audio portion of the tape] also provides a physical exemplar of the suspect's manner of speech at the time of arrest. A jury may use the quality of the suspect's speech as evidence of her degree of intoxication." (citations omitted)). Consequently, Compton's argument under the Fifth Amendment fails in this regard as well.

### C.    Admissibility under the Sixth Amendment

Compton contends that the portion of the video in which he requested an attorney is inadmissible under the Sixth Amendment because his right to counsel had already attached at that point.

#### 1.    Preservation of Error

The State argues that Compton failed to preserve this error because "it appears from the context of trial counsel's discourse with the judge that his argument was that the tape should be stopped *after* [Compton] invoked his right to an attorney." Under the Texas Rules of Appellate Procedure, preservation of appellate complaints requires that the record show "the complaint was made to

14

the trial court by a timely request, objection or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint." Tex. R. App. P. 33.1(a)(1)(A). By objecting to the jury's viewing of a specific portion of Compton's arrest video, defense counsel objected with sufficient specificity. The record demonstrates that defense counsel desired to stop the video at 42:30 based on his client's Fifth and Sixth Amendment rights. Moreover, video of Compton's arrest clearly shows Compton refusing to give a blood or breath specimen at 42:34 and requesting to speak to his attorney at 42:50.

Additionally, it is necessary for the trial court to have ruled on the request, objection, or motion, either expressly or implicitly, or for the complaining party to have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). The record shows the trial court expressly overruled Compton's objections to the specific portion of the video and allowed the jury to view the video in its entirety. Accordingly, Compton's defense counsel preserved this argument. *See* Tex. R. App. P. 33.1.

### 2.    Attachment of the Right to Counsel

Compton contends that because his Sixth Amendment right to counsel attached as soon as he requested an attorney, the trial court erred by admitting subsequent statements as evidence. The Right-to-Counsel Clause of the Sixth

Amendment protects the right to counsel "only at or after the time that adversary judicial proceedings have been initiated, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Griffith*, 55 S.W.3d at 603 (citing *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S. Ct. 1877, 1881 (1972)). "A person [does] not become an 'accused' within the meaning of the Sixth Amendment simply because he has been detained by the government with the intention of filing charges against him." *Id.* at 603–04 (citing *United States v. Gouveia*, 467 U.S. 180, 187–90, 104 S. Ct. 2292, 2297–99 (1984)). The Sixth Amendment right to counsel does not attach until the start of adversary judicial proceedings; thus any statements made by the arrestee regarding his right to speak to an attorney are not protected until this point. *See id.*

Compton argues that he was harmed by the trial court "allowing the jury to observe [his] invocation of his right to counsel and any portion of the videotape thereafter." He cites *Hardie v. State* to support his contention, quoting from the opinion: "While the invocation of counsel may have no relevance as regards the State's proffer of a defendant's refusal to take the breath test, a different question is presented when the State has sought to introduce evidence of the request for counsel as evidence of guilt." 807 S.W.2d 319, 321 (Tex. Crim. App. 1991). Compton argues that the State used his repeated request for an attorney as a method of proving his intoxication, which directly contradicts the holding in *Hardie*. This case is distinguishable from *Hardie*, however, because, as the

16

State points out, the appellant in *Hardie* had already been *Mirandized* and was being interrogated when the incriminating statements were made. *See id.* at 323–24. Here, no adversary judicial proceedings had begun, nor had Compton been formally charged with an offense when he made the statements. Thus, Compton's Sixth Amendment right to counsel was not implicated by the trial court's admission of these statements because his right had not yet attached. *See Griffith*, 55 S.W.3d at 604 ("Administering a breath-alcohol test to an arrestee after he has made a request for, but not received, the advice of counsel does not violate the Sixth Amendment right to counsel . . . because the right has not attached."). As such, the trial court did not abuse its discretion by admitting Compton's statements. *See Montgomery*, 810 S.W.2d at 391. Accordingly, we overrule Compton's second point.

## V. CONCLUSION

Having overruled Compton's two points, we affirm the trial court's judgment.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER, and GABRIEL, JJ.

GABRIEL, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 30, 2015

17