Affirmed and Memorandum Opinion filed March 8, 2007








Affirmed and Memorandum Opinion filed March 8, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01244-CR

____________

 

LAMONT MARCELOUS GILBERT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 268th
District Court

Fort Bend County, Texas

Trial Court Cause No. 40,546

 



 

M E M O R A N D U M   O P I N I O N

Appellant Lamont Marcelous Gilbert was convicted by a jury
of felony driving while intoxicated (ADWI@) and sentenced to
two years= confinement.  In one issue, appellant complains the
evidence is factually insufficient to support a guilty verdict.  We affirm.  

I.  Factual and Procedural Background








On June 27, 2004 at 4:22 a.m., Deputy James Ressler of the
Fort Bend County Sheriff=s Office observed a truck parked near the
entrance of a bank in Fort Bend County, Texas.  After exiting his patrol car
and approaching the truck, Deputy Ressler noticed the driver, appellant,
resting his head on the steering wheel.  Appellant looked at Ressler and drove
away.  According to Deputy Ressler, appellant drove through the bank=s parking lot and
into a fast-food restaurant=s parking lot located next door.  Ressler
followed.  He stated that appellant did not demonstrate any signs of intoxication
while driving.  After parking at the restaurant, appellant exited his vehicle
and began walking toward the restaurant.  Deputy Ressler observed appellant Aswagger from front
to back and side to side.@ He believed appellant was Aintoxicated or
possibly had some type of medical condition.@  

When Deputy Ressler approached appellant, he immediately smelled
a distinct odor of alcohol on appellant=s breath and
person.  In response to questions by Ressler, appellant indicated that he did
not know where he was and, despite two requests by Deputy Ressler, was unable
to produce a driver=s license. Finally, after a third request,
appellant handed Ressler a card indicating he was on probation for a prior
DWI.  Deputy Ressler noticed that, during their colloquy, appellant slurred his
speech and had bloodshot eyes.  The deputy testified that, at this point, he Ahad reason to
believe [appellant] was possibly intoxicated.@

Ressler then told appellant to stand behind his truck as he
checked appellant=s driver=s license status
on the computer in his patrol car.  Appellant, however, attempted to walk to
the driver=s side of the truck, and Deputy Ressler redirected him
and again told him to stand behind the truck.  Deputy Ressler then saw
appellant walk to the rear passenger side of the truck and reach into his
pocket.  Ressler testified he soon heard Asomething glass
hit the concrete where [appellant] was standing.@  Deputy Ressler
immediately went to  investigate and found a small bottle of vodka, still
intact, on the ground near appellant; he could not remember whether the bottle
was empty.








Deputy Ressler did not attempt to administer field sobriety
tests because of appellant=s demonstrated inability to follow
directions.  Instead, he placed appellant in the back of his patrol car because
he Ahad reason to
believe . . . he was intoxicated,@ and, because
appellant had reached into his pocket, he did not feel safe leaving appellant
standing behind the truck.  Deputy Ressler then, in an attempt to Acut [appellant] a
break,@ asked appellant
for a phone number of someone to call to come pick him up. However, the person
Ressler contacted responded that she was not able to come.  Deputy Ressler
testified that appellant then became Aagitated@ and began
yelling.  En route to the jail, appellant yelled and kicked the divider in the
back of the patrol car.  Upon arriving at the jail, appellant was placed into a
DWI investigation room, which was equipped with a video and audio recorder.  In
the investigation room, Deputy Ressler testified that appellant would not
follow instructions, was belligerent, yelled, kicked the wall of the room, and
spit on the floor.  The State admitted a video recording of appellant in the
room, and Deputy Ressler testified that appellant=s actions in the
room reflected his actions at the scene.  Because of appellant=s aggressive
behavior, Deputy Ressler never administered field sobriety tests, and appellant
refused to submit to a breath test.

Deputy Ressler testified  that, given appellant=s lack of
knowledge of his whereabouts, his generally unresponsive answers, his inability
to produce identification after two requests, his inability to follow
instructions, and his belligerent demeanor, he believed appellant had lost the
normal use of his mental faculties due to alcohol intoxication.  He further
testified that because appellant rested his head on his steering wheel,
staggered, and emitted a strong odor of alcohol, he thought appellant had
similarly lost the normal use of his physical faculties due to alcohol
intoxication.

Appellant testified to a different version of the events. 
He denied parking in the bank=s parking lot or driving from the bank=s lot to the lot
in the restaurant.  He testified that he had come from a wedding and became
lost.  Because it was dark outside, appellant claimed he parked in the
restaurant=s parking lot and slept in the cab of his truck,
intending to find his way back when it became lighter outside.  Appellant
stated he was awakened by Deputy Ressler tapping on his window.  Appellant
maintained that his truck was equipped with an interlock device, which required
him to pass a breath test before the vehicle would start; thus, to speak to
Deputy Ressler, appellant testified he successfully blew into the device to
turn the key so he could roll down his window.  Deputy Ressler, on the other
hand, testified he never saw anything Aconsistent with@ an interlock
device on appellant=s vehicle. 








Appellant denied drinking alcohol the day in question and
denied being intoxicated.  Appellant reasoned that he could not have driven
drunk at any point because his vehicle would not have started after a failed
breath test.  When asked why he refused Deputy Ressler=s request for a
breath test, appellant explained that Ressler had already seen appellant
successfully pass a breath test when he started his car to roll the window
down.  Though appellant admitted being Afurious@ at the scene, he
attributed his belligerent behavior to his frustration over Deputy Ressler=s request for a
breath test and his inability to contact family or get help and averred that Anothing got bad
until I showed him my probation card.@

Appellant now challenges his conviction, claiming there was
factually insufficient evidence of intoxication to support the jury=s
verdict.                                       

II.  Standard of Review








In conducting a factual sufficiency review of the jury=s determination,
we do not view the evidence Ain the light most favorable to the
prosecution.@  Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997).  Rather, we look at all evidence in a neutral light and will
reverse a conviction only if (1) the evidence of guilt is so weak that the jury=s verdict seems
clearly wrong and manifestly unjust or, (2) considering conflicting evidence,
the jury=s verdict, though
legally sufficient, is nevertheless against the great weight and preponderance
of the evidence.  Watson v. State, 204 S.W.3d 404, 414B15 (Tex. Crim.
App. 2006).  However, it is not enough that we may harbor a subjective level of
reasonable doubt to overturn a conviction that is founded on legally sufficient
evidence.  Id. at 417.  We cannot conclude that a conviction is Aclearly wrong@ or Amanifestly unjust@ simply because,
on the quantum of evidence admitted, we would have voted to acquit had we been
on the jury.  Id.  Nor can we declare that a conflict in the evidence
justifies a new trial simply because we may disagree with the jury=s resolution of
that conflict.  Id.  Rather, before ordering a new trial, we must first
be able to say, with some objective basis in the record, that the great weight
and preponderance of the (albeit legally sufficient) evidence contradicts the
jury=s verdict.  Id. 
Our evaluation should not intrude upon the fact‑finder=s role as the sole
judge of the weight and credibility given to the evidence and any witness=s testimony.  Cain,
958 S.W.2d at 407.  In conducting our review, we must also discuss the evidence
appellant claims is the most important in allegedly undermining the jury=s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 

III.  Analysis

Appellant contends the State=s evidence of
intoxication is  too weak to support a guilty verdict.  Specifically, appellant
makes the following contentions in attempting to undermine the jury=s verdict:  (1)
Deputy Ressler had an inadequate opportunity to form a rationally-based opinion
that appellant was intoxicated, as evidenced by his testimony that appellant
was Apossibly@ intoxicated, (2)
Ressler did not observe any signs of intoxication when he saw appellant driving
the truck, (3) the State never definitively disproved appellant=s testimony that
his car had an ignition interlock device, and (4) the vodka bottle that
appellant allegedly threw away was never introduced into evidence.  

The jury could convict appellant of DWI if it found beyond
a reasonable doubt that appellant was intoxicated while operating a motor
vehicle in a public place.  See Tex.
Penal Code Ann. ' 49.04(a) (Vernon 2003).  A person is
considered Aintoxicated@ if he or she (1)
does not have the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of those substances, or any other substance into the body or (2)
has an alcohol concentration in his breath, blood, or urine of 0.08 or more.  See
id. '' 49.01(1), (2)(A)B(B) (Vernon 2003);
Cotton v. State, 686 S.W.2d 140, 142B43 & n.3 (Tex.
Crim. App. 1985) (enumerating various types of intoxication evidence, including
odor of alcohol on person or breath, unsteady balance, and staggered gait). 








We find appellant=s contentions
unpersuasive.  First, appellant reads Deputy Ressler=s statement that
he believed appellant was Apossibly intoxicated@ in a vacuum,
disregarding the remainder of Ressler=s testimony
regarding his observations and opinions.  Deputy Ressler=s statement
describes his impression after initially seeing appellant stagger and detecting
the odor of alcohol on his person.  However, Deputy Ressler also testified
that, based on the entirety of appellant=s behavior,
including his inability to follow instructions and belligerency, he believed
appellant had lost the normal use of his mental and physical faculties due to
alcohol intoxication.  Second, Deputy Ressler=s failure to
observe signs of intoxication while appellant drove his vehicle is unavailing
given that Ressler observed signs of intoxication directly after he witnessed
appellant drive his vehicle.  See, e.g., Rodriguez v. State, 31
S.W.3d 359, 361 (Tex. App.CSan Antonio 2000, pet. ref=d) (holding that
investigating officer=s testimony that he thought appellant was
intoxicated, which was based entirely on conduct after appellant exited
vehicle, rather than how appellant drove vehicle, was factually sufficient to
support DWI conviction).  Third, appellant=s contention that
the State failed to Adefinitively disprove[]@ that his vehicle
contained an interlock device lacks merit.  Neither party offered any physical
evidence tending to prove or disprove the presence of an interlock device in
appellant=s car.  Therefore, determination of this issue
depended solely on the credibility of the competing witnesses, appellant and
Deputy Ressler.  The jury chose to believe the latter, and we will not disturb
this finding.  See Cain, 958 S.W.2d at 407.  Fourth, though the State
did not admit the vodka bottle itself at trial, Ressler testified about the
vodka bottle in detail, and, moreover, the State admitted a wrecker slip
created during an inventory search of the vehicle that listed the vodka bottle
as an item retrieved.    








In addition to the evidence appellant underscores, we have
reviewed the remaining evidence in the record.  Viewing the evidence in a
neutral light, we do not find the evidence of intoxication so weak as to render
the verdict clearly wrong and manifestly unjust or that the jury=s verdict
contradicts the great weight and preponderance of the evidence.  See Watson,
204 S.W.3d at 417.  Given the lack of scientific evidence, the element of
intoxication rested largely on a credibility determination of the witnesses,
namely appellant and Deputy Ressler.  The jury had the discretion to determine
issues of credibility, and we afford great deference to its findings.  See
Cain, 958 S.W.2d at 407;  Page v. State, 7 S.W.3d 202, 209 (Tex.
App.CFort Worth 1999,
pet. ref=d) (holding in DWI
case that, where neither party presented scientific evidence, and case depended
solely on question of credibility, court would not determine whether appellant=s or arresting
officer=s version of
events proved more credible).  Moreover, in addition to Ressler=s testimony,  the 
videotape showing appellant=s belligerent behavior, the wrecker slip
showing the vodka bottle retrieved from the scene, and appellant=s refusal to
submit to a breath test supports the jury=s finding of
intoxication.  See Griffith v. State, 55 S.W.3d 598, 601 (Tex. Crim.
App. 2001) (holding that refusal to submit to blood-alcohol test constitutes
evidence of intoxication). 

Accordingly, we overrule appellant=s sole issue and
affirm the trial court=s judgment.  

 

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed March 8, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.

Do Not Publish C Tex. R. App. P. 47.2(b).