TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00516-CR







Richard Barnett, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT


NO. 2006-106, HONORABLE TODD BLOMERTH, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



A jury found appellant Richard Barnett guilty of driving while intoxicated, third
offense. See Tex. Penal Code Ann. § 49.04 (West 2003), § 49.09(b)(2) (West Supp. 2008). The
district court assessed punishment, enhanced by two previous felony convictions, at forty-five years'
imprisonment. In two points of error, appellant contends that the evidence is factually insufficient
to support the jury's verdict and that his trial counsel rendered ineffective assistance. We overrule
these contentions and affirm the conviction.

Appellant questions the sufficiency of the evidence only with respect to the question
of his intoxication. In a factual sufficiency review, we view all the evidence in a neutral light,
favoring neither party. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.
App. 2000). The jury's verdict may be set aside only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust or if it is against the great weight and
preponderance of the evidence. Watson, 204 S.W.3d at 414-17; Johnson, 23 S.W.3d at 7, 11.

The State's only witness at the guilt-innocence stage was Lockhart police officer
Ysidro Torres. (1) Torres testified that he stopped a pickup truck being driven without headlights at
11:45 p.m. Appellant was the operator of the truck. Torres immediately noticed that appellant's
eyes were bloodshot, his speech was slurred, and he had about him the odor of alcoholic beverage. 
When Torres asked appellant to get out of his vehicle, the officer noticed an open beer can in the
truck. Torres later determined that this can was half-full and cold to the touch. Torres testified that
appellant's pants were wet, as if he had spilled beer in his lap or urinated in his pants. Appellant told
Torres that he was on his way home from a bar and that he had consumed "a couple of beers."

Torres and appellant were standing in a gas station parking lot. Torres testified that
the surface was "flat and level," but appellant's "balance was unsure" and he "swayed from side to
side." Torres said that he attempted to administer the horizontal gaze nystagmus test, but he was
unable to complete the test because appellant did not follow his instructions. During the walk-and-turn test, appellant stopped while walking, stepped off the line, and raised his hands. During the one-legged stand test, appellant stopped counting at five. Torres testified that it was his opinion, based
on his training and experience, that appellant was intoxicated. Following his arrest, appellant refused
to submit a sample of his breath for testing. A videotape showing appellant at the scene of the stop
and in the intoxilyzer room at the jail was introduced in evidence and played for the jury. 

Defense witness Frances Bennett testified that she lived with appellant for eighteen
months. She said that appellant does not speak clearly, that he "stutters and slurs." She added that
appellant's broken false teeth make his speech even worse. Bennett testified that appellant's arm
and left foot are "messed up from surgery," and that he "walks with his arm out" and "does weird
things with his fingers." She described appellant as "slow," and she said that "you would think he
is disabled in the way he walks and talks." Bennett, a six-year resident of Lockhart, also testified
that she was familiar with the reputation of Officer Torres in the community, and that he was
considered to be "a dishonest cop." Finally, Bennett testified that she had often driven appellant's
pickup truck and that the headlights "would go off and on sometimes."

The other defense witness was Russell Griffin. Griffin testified that he had known
appellant since 1980. His description of appellant's manner of speaking and moving was similar to
Bennett's. He testified that appellant was "a slow person" and that "sometimes you have to repeat
or explain to [him] what you meant when you're telling him something." Griffin also testified that
appellant's pickup truck was in poor condition and difficult to drive.

Appellant argues that the evidence regarding his intoxication was wholly inferential,
that there was no "actual evidence" that he did not have the normal use of his mental or physical
faculties. He asserts that the signs of intoxication Torres claimed to have seen can be explained by
his speech impediment and physical disabilities. Appellant argues that if he was driving without his
headlights, it was not because he was intoxicated but because the lights were defective. Finally,
appellant urges that Torres was not a credible witness given his reputation in the community.

The jury found the evidence of intoxication to be persuasive, and we owe that
determination considerable deference. See King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000). We may not substitute our judgment for that of the jury, and we may not order a new trial
simply because we disagree with the jury's verdict. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997). The jury alone determines the weight to place on contradictory testimony because that
determination depends on the evaluation of credibility and demeanor. Id. at 408. We may disagree
with the jury's result only to prevent a manifest injustice. Johnson, 23 S.W.3d at 9. Having
considered all the evidence in a neutral light, we conclude that the jury's verdict was not manifestly
unjust. Point of error one is overruled.

In his second point of error, appellant contends that his trial counsel "violated [his]
right . . . to seek hybrid representation for the purpose of seeking to allow the jury to hear [him]
invoke his right to counsel on the DWI video, contrary to his lawyer's advice." Appellant's
argument under this point of error is not, however, about hybrid representation, which he was not
absolutely entitled to and, in any event, never requested. See Scarbrough v. State, 777 S.W.2d 83,
92 (Tex. Crim. App. 1989). Appellant is actually asserting an ineffective assistance of counsel
claim. In effect, appellant argues that his attorney was ineffective because she did not permit the jury
to hear appellant ask for a lawyer in the intoxilyzer room following his arrest.

To prevail on a claim of ineffective assistance of counsel, an appellant must show that
counsel made such serious errors that he was not functioning effectively as counsel and that these
errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. See
Strickland v. Washington, 466 U.S. 668, 687 (1984). In reviewing a claim of ineffective assistance,
we must indulge a strong presumption that counsel's conduct fell within the wide range
of reasonable professional assistance. See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim.
App. 1994). 

The issue first arose during the punishment phase of trial, where appellant testified. 
Asked by his attorney if there was "anything you'd like to tell the Judge before you get off the
stand," appellant replied:


Yes, ma'am, about the way my trial went and how I thought that it was
misrepresented. Like when the . . . while they was watching the videotape, how all
of a sudden my lawyer jumps up, has it muted. I wanted the jurors to see that
because the cop I knew was a dishonest cop. And he read me my rights. And I went
by my rights.


They are saying I refused to blow. I wasn't refusing to blow. I wanted
somebody else, a lawyer or somebody else, that I could trust. A dirty cop. And I
knew he was dirty. And it's a machine, and it can be tampered with. And I feel that
was unfair that--when that video was muted, you know, because I wanted to get on
the stand. My attorney didn't want me on the stand. You know, that was the only
chance I had to beat it. And I feel I was misrepresented. I feel she messed with the
evidence, you know.



The attorney appointed to represent appellant on appeal also raised the issue in a
motion for new trial. The motion complained that "trial counsel had the sound on the DWI
videotape turned off during a sequence when Defendant was in the intoxilyzer room." The motion
asserted, "Defendant wanted the jury to hear him ask for an attorney, because that would explain why
he did not submit a breath sample. What Defendant wanted the jury to understand was that he did
not trust Officer Torres to run the machine properly . . . ." At the new trial hearing, appellant
testified that he wanted the jury to hear him request an attorney "[t]o let them know I wasn't refusing
to blow, that I just didn't trust the officer." 

Appellant's trial counsel also testified at the hearing. She agreed that appellant
wanted the jury to understand why he refused the breath test:


He said he wanted the jury to know that the officer--he didn't trust the officer
and that it really wasn't that he never refused the test. He just wanted his lawyer. 
And we talked about that from the first time that I met Mr. Barnett. He kept saying,
"I didn't refuse. I didn't refuse." And I explained the law to him that invocation of
his right to counsel or asking for counsel to be present is an equivocal refusal. And
so we went back and forth about that. And I explained to him that we had other ways
to explain the lack of trustworthiness of this officer.[ (2)]



Counsel testified that she advised appellant against allowing the jury to hear him request counsel,
and that appellant never said, "I want this done, and this is the way it's going to be." Referring to
Bennett's testimony regarding Torres's bad reputation, counsel said, "I thought that would handle
the situation." Counsel also testified that it would have been a "suicide mission" for appellant to
testify at the guilt stage because the jury would have learned that he had two previous felony
convictions for driving while intoxicated.

The issue before us is not whether appellant's invocation of his right to counsel was
or was not admissible as evidence of guilt under the circumstances of this case. See Griffith v. State,
55 S.W.3d 598, 602-08 (Tex. Crim. App. 2001). The issue is whether appellant's trial counsel was
ineffective because she did not waive any objection and ask that the jury be allowed to hear that
invocation. We conclude that she was not. Hearing appellant invoke his right to counsel would not,
in itself, have conveyed to the jury appellant's mistrust of the officer, which was his alleged reason
for wanting counsel to be present. At the same time, the jury might have considered the request for
counsel to be evidence that appellant was aware of his intoxication and for that reason wanted to
consult with counsel before taking the test. See id. at 601. Appellant has not shown that trial
counsel's decision to prevent the jury from hearing his request for an attorney was outside the broad
range of reasonably effective assistance. Point of error two is overruled.

The judgment of conviction is affirmed.



 __________________________________________

 Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: November 26, 2008

Do Not Publish
1. The record reflects that Torres was not employed as a police officer at the time of the trial.
2. During the hearing, the prosecutor referred to "improprieties" by Torres that had been "reported
in various media outlets."