# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00516-CR

**Richard Barnett, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT NO. 2006-106, HONORABLE TODD BLOMERTH, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found appellant Richard Barnett guilty of driving while intoxicated, third offense. *See* Tex. Penal Code Ann. § 49.04 (West 2003), § 49.09(b)(2) (West Supp. 2008). The district court assessed punishment, enhanced by two previous felony convictions, at forty-five years' imprisonment. In two points of error, appellant contends that the evidence is factually insufficient to support the jury's verdict and that his trial counsel rendered ineffective assistance. We overrule these contentions and affirm the conviction.

Appellant questions the sufficiency of the evidence only with respect to the question of his intoxication. In a factual sufficiency review, we view all the evidence in a neutral light, favoring neither party. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The jury's verdict may be set aside only if it is so contrary to the overwhelming weight

of the evidence as to be clearly wrong and unjust or if it is against the great weight and preponderance of the evidence. *Watson*, 204 S.W.3d at 414-17; *Johnson*, 23 S.W.3d at 7, 11.

The State's only witness at the guilt-innocence stage was Lockhart police officer Ysidro Torres.[1] Torres testified that he stopped a pickup truck being driven without headlights at 11:45 p.m. Appellant was the operator of the truck. Torres immediately noticed that appellant's eyes were bloodshot, his speech was slurred, and he had about him the odor of alcoholic beverage. When Torres asked appellant to get out of his vehicle, the officer noticed an open beer can in the truck. Torres later determined that this can was half-full and cold to the touch. Torres testified that appellant's pants were wet, as if he had spilled beer in his lap or urinated in his pants. Appellant told Torres that he was on his way home from a bar and that he had consumed "a couple of beers."

Torres and appellant were standing in a gas station parking lot. Torres testified that the surface was "flat and level," but appellant's "balance was unsure" and he "swayed from side to side." Torres said that he attempted to administer the horizontal gaze nystagmus test, but he was unable to complete the test because appellant did not follow his instructions. During the walk-and-turn test, appellant stopped while walking, stepped off the line, and raised his hands. During the one-legged stand test, appellant stopped counting at five. Torres testified that it was his opinion, based on his training and experience, that appellant was intoxicated. Following his arrest, appellant refused to submit a sample of his breath for testing. A videotape showing appellant at the scene of the stop and in the intoxilyzer room at the jail was introduced in evidence and played for the jury.

---

[1] The record reflects that Torres was not employed as a police officer at the time of the trial.

Defense witness Frances Bennett testified that she lived with appellant for eighteen months. She said that appellant does not speak clearly, that he "stutters and slurs." She added that appellant's broken false teeth make his speech even worse. Bennett testified that appellant's arm and left foot are "messed up from surgery," and that he "walks with his arm out" and "does weird things with his fingers." She described appellant as "slow," and she said that "you would think he is disabled in the way he walks and talks." Bennett, a six-year resident of Lockhart, also testified that she was familiar with the reputation of Officer Torres in the community, and that he was considered to be "a dishonest cop." Finally, Bennett testified that she had often driven appellant's pickup truck and that the headlights "would go off and on sometimes."

The other defense witness was Russell Griffin. Griffin testified that he had known appellant since 1980. His description of appellant's manner of speaking and moving was similar to Bennett's. He testified that appellant was "a slow person" and that "sometimes you have to repeat or explain to [him] what you meant when you're telling him something." Griffin also testified that appellant's pickup truck was in poor condition and difficult to drive.

Appellant argues that the evidence regarding his intoxication was wholly inferential, that there was no "actual evidence" that he did not have the normal use of his mental or physical faculties. He asserts that the signs of intoxication Torres claimed to have seen can be explained by his speech impediment and physical disabilities. Appellant argues that if he was driving without his headlights, it was not because he was intoxicated but because the lights were defective. Finally, appellant urges that Torres was not a credible witness given his reputation in the community.

3

The jury found the evidence of intoxication to be persuasive, and we owe that determination considerable deference. *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We may not substitute our judgment for that of the jury, and we may not order a new trial simply because we disagree with the jury's verdict. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The jury alone determines the weight to place on contradictory testimony because that determination depends on the evaluation of credibility and demeanor. *Id.* at 408. We may disagree with the jury's result only to prevent a manifest injustice. *Johnson*, 23 S.W.3d at 9. Having considered all the evidence in a neutral light, we conclude that the jury's verdict was not manifestly unjust. Point of error one is overruled.

In his second point of error, appellant contends that his trial counsel "violated [his] right . . . to seek hybrid representation for the purpose of seeking to allow the jury to hear [him] invoke his right to counsel on the DWI video, contrary to his lawyer's advice." Appellant's argument under this point of error is not, however, about hybrid representation, which he was not absolutely entitled to and, in any event, never requested. *See Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex. Crim. App. 1989). Appellant is actually asserting an ineffective assistance of counsel claim. In effect, appellant argues that his attorney was ineffective because she did not permit the jury to hear appellant ask for a lawyer in the intoxilyzer room following his arrest.

To prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). In reviewing a claim of ineffective assistance,

4

we must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

The issue first arose during the punishment phase of trial, where appellant testified. Asked by his attorney if there was "anything you'd like to tell the Judge before you get off the stand," appellant replied:

> Yes, ma'am, about the way my trial went and how I thought that it was misrepresented. Like when the . . . while they was watching the videotape, how all of a sudden my lawyer jumps up, has it muted. I wanted the jurors to see that because the cop I knew was a dishonest cop. And he read me my rights. And I went by my rights.
>
> They are saying I refused to blow. I wasn't refusing to blow. I wanted somebody else, a lawyer or somebody else, that I could trust. A dirty cop. And I knew he was dirty. And it's a machine, and it can be tampered with. And I feel that was unfair that—when that video was muted, you know, because I wanted to get on the stand. My attorney didn't want me on the stand. You know, that was the only chance I had to beat it. And I feel I was misrepresented. I feel she messed with the evidence, you know.

The attorney appointed to represent appellant on appeal also raised the issue in a motion for new trial. The motion complained that "trial counsel had the sound on the DWI videotape turned off during a sequence when Defendant was in the intoxilyzer room." The motion asserted, "Defendant wanted the jury to hear him ask for an attorney, because that would explain why he did not submit a breath sample. What Defendant wanted the jury to understand was that he did not trust Officer Torres to run the machine properly . . . ." At the new trial hearing, appellant

5

testified that he wanted the jury to hear him request an attorney "[t]o let them know I wasn't refusing to blow, that I just didn't trust the officer."

Appellant's trial counsel also testified at the hearing. She agreed that appellant wanted the jury to understand why he refused the breath test:

> He said he wanted the jury to know that the officer—he didn't trust the officer and that it really wasn't that he never refused the test. He just wanted his lawyer. And we talked about that from the first time that I met Mr. Barnett. He kept saying, "I didn't refuse. I didn't refuse." And I explained the law to him that invocation of his right to counsel or asking for counsel to be present is an equivocal refusal. And so we went back and forth about that. And I explained to him that we had other ways to explain the lack of trustworthiness of this officer.[2]

Counsel testified that she advised appellant against allowing the jury to hear him request counsel, and that appellant never said, "I want this done, and this is the way it's going to be." Referring to Bennett's testimony regarding Torres's bad reputation, counsel said, "I thought that would handle the situation." Counsel also testified that it would have been a "suicide mission" for appellant to testify at the guilt stage because the jury would have learned that he had two previous felony convictions for driving while intoxicated.

The issue before us is not whether appellant's invocation of his right to counsel was or was not admissible as evidence of guilt under the circumstances of this case. *See Griffith v. State*, 55 S.W.3d 598, 602-08 (Tex. Crim. App. 2001). The issue is whether appellant's trial counsel was ineffective because she did not waive any objection and ask that the jury be allowed to hear that

---

[2] During the hearing, the prosecutor referred to "improprieties" by Torres that had been "reported in various media outlets."

invocation. We conclude that she was not. Hearing appellant invoke his right to counsel would not, in itself, have conveyed to the jury appellant's mistrust of the officer, which was his alleged reason for wanting counsel to be present. At the same time, the jury might have considered the request for counsel to be evidence that appellant was aware of his intoxication and for that reason wanted to consult with counsel before taking the test. *See id*. at 601. Appellant has not shown that trial counsel's decision to prevent the jury from hearing his request for an attorney was outside the broad range of reasonably effective assistance. Point of error two is overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed:  November 26, 2008

Do Not Publish