

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-23-00108-CR

---

TRAVIS TREMAIN BLEDSOE, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 21M1954-CCL

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Bowie County jury convicted Travis Tremain Bledsoe of driving while intoxicated[1] (DWI) and assessed his sentence at 365 days in the county jail. In a single point of error, Bledsoe challenges the sufficiency of the evidence to support his conviction. Because we find that legally sufficient evidence supports Bledsoe's conviction, we affirm the trial court's judgment.

## I.    Background

On the night of October 30, 2021, Landon Simmons, an officer for the City of Texarkana, Texas, was working routine patrol when he observed a vehicle driven by Bledsoe traveling at eighty-five miles per hour in a sixty-five-mile-per-hour zone. While initiating the traffic stop and attempting to catch up to Bledsoe's vehicle, Simmons observed "that [Bledsoe] kind of began crossing the center line that divided the two southbound lanes of Jarvis Parkway." Simmons testified that "it just felt like a routine [traffic] stop," but then he noticed Bledsoe's speech was slurred, causing Simmons to become "a little bit suspicious of a DWI." Simmons described Bledsoe's eyes as "glazed over" with not "much life to them." Even so, Simmons did not immediately begin conducting standardized field sobriety tests. Instead, he finished writing the speeding citation. It was at that point that Simmons began to smell the odor of alcohol on Bledsoe's breath and conducted field sobriety tests.

According to Simmons, the horizontal gaze nystagmus (HGN) test revealed that Bledsoe exhibited involuntary eye movement, a clue that the person being tested is intoxicated. The

---

[1]TEX. PENAL CODE ANN. § 49.04(a).

second clue Bledsoe exhibited, according to Simmons, was distinct nystagmus at maximum deviation, meaning the eyes began to rapidly move back and forth at maximum deviation. The third clue Bledsoe exhibited, according to Simmons, was the onset of nystagmus prior to forty-five degrees, meaning the rapid eye movement began prior to maximum deviation. According to Simmons, Bledsoe also exhibited the presence of vertical nystagmus. Simmons explained that people cannot control nystagmus after consuming alcohol.

The walk-and-turn test and the one-leg-stand test are divided attention tests in which the person being tested must follow a long list of instructions that they are required to remember and follow. Simmons explained that Bledsoe started the walk-and-turn test properly by taking heel-to-toe steps. As Bledsoe progressed, he lost attention and began to separate his feet, a sign of intoxication. After administering the walk-and-turn test, Simmons administered the one-leg-stand test, which is designed to test balance for a period of thirty seconds. During that test, Bledsoe put his foot down several times, used his arms to help keep him balanced, and swayed. Each of those are signs of intoxication. After that, Simmons administered a second HGN test because he wanted to be sure it had been done correctly and wanted to give Bledsoe the benefit of the doubt. The results of the second HGN test were the same as the first. At that point, Simmons placed Bledsoe under arrest.

After reading Bledsoe his statutory warnings, Simmons asked for a breath sample, to which Bledsoe initially agreed. He ultimately ended up refusing to give a breath or blood sample. Simmons warned Bledsoe that a refusal to give a breath sample may be admissible in a subsequent prosecution. In Simmons's opinion, Bledsoe was intoxicated.

Colby Stratton, a back-up officer, arrived on the scene only a minute before Bledsoe was taken into custody. Stratton impounded Bledsoe's vehicle and found no alcohol, bottles, or drugs in the vehicle.

## II.     Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

"It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* at 297 (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13).

"The jury[, as] the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* at 297 (third alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)). "We may not re-weigh the evidence or substitute our judgment for that of the fact[-]finder." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018) (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). "The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence." *Id.* at 733 (quoting *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017)). "Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial." *Id.* (citing *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016)).

## III.    Analysis

The statute criminalizing DWI states, "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place."   TEX. PENAL CODE ANN. § 49.04(a).  Bledsoe complains that the evidence was insufficient to show, beyond a reasonable doubt, that he was intoxicated.  "Intoxicated" is defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." TEX. PENAL CODE ANN. § 49.01(2)(A).[2]

Intoxication can be proven through circumstantial evidence.  *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) ("Circumstantial evidence may prove that a person has lost the normal use of his mental or physical faculties by reason of introduction of [alcohol] . . . into his body."); *Paschall v. State*, 285 S.W.3d 166, 177 (Tex. App.—Fort Worth 2009, pet. ref'd) (same).  "Since the definition of 'intoxicated' includes 'not having the normal use of mental or physical faculties,' any sign of impairment in the appellant's ability to speak would be circumstantially relevant to whether he was legally intoxicated while driving."  *Griffith v. State*, 55 S.W.3d 598, 601 (Tex. Crim. App. 2001) (quoting TEX. PENAL CODE ANN. § 49.01(2)(A)); *see Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (slurred speech, unsteady balance, odor of alcohol, and staggered gait are evidence of intoxication); *Zill*

---

[2]"Intoxicated" also means "having an alcohol concentration of 0.08 or more."   TEX. PENAL CODE ANN. § 49.01(2)(B).  Because Bledsoe did not agree to a breath or blood sample, our analysis rests on the definition provided in Section 49.01(2)(A).  *See* TEX. PENAL CODE ANN. § 49.01(2)(A).

*v. State*, 355 S.W.3d 778, 786 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("poor performance on the standardized field sobriety tests is . . . evidence of intoxication").

"Also relevant as evidence of intoxication is a refusal to take a blood-alcohol test." *Griffith*, 55 S.W.3d at 601 (citing TEX. TRANSP. CODE ANN. § 724.015) (warning that, "if the person refuses to submit to the taking of a specimen, that refusal may be admissible in a subsequent prosecution"). Further, "the testimony of an officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication for the offense of DW[I]." *Kiffe*, 361 S.W.3d at 108 (citing *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979)).

The evidence in this case revealed that Bledsoe was traveling eighty-five miles per hour in a sixty-five-mile-per-hour zone. After he was stopped, Simmons smelled alcohol on Bledsoe and administered standard field sobriety tests. Simmons testified that Bledsoe exhibited evidence of intoxication on the heel-to-toe walking test, the straight-leg stand, as well as two HGN tests. At trial, the jury viewed the video of those tests recorded on Simmons's body camera and were able to determine for themselves whether Bledsoe performed poorly on the standard field sobriety tests.[3] Simmons also testified that Bledsoe's voice was slurred and that his eyes were glazed. In addition to that testimony, the jury was shown an additional recording taken from a camera aimed at Bledsoe inside the patrol car. During the ride to jail, Bledsoe talked to Simmons. From that evidence, the jury was free to consider whether Bledsoe's speech

---

[3]The body-camera footage did not capture the results of the HGN testing.

7

was slurred. In addition, Bledsoe's refusal to provide a breath or blood sample is evidence of intoxication. Finally, Simmons testified that, in his opinion, Bledsoe was intoxicated.

This evidence is sufficient proof from which a jury could have concluded that Bledsoe was intoxicated. We overrule Bledsoe's point of error.

## IV. Conclusion

We affirm the trial court's judgment.


Jeff Rambin
Justice

Date Submitted:     November 21, 2023
Date Decided:       December 7, 2023

Do Not Publish