**Affirm and Opinion Filed March 19, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01212-CR**

**No. 05-22-01213-CR**

**DARWOOD LYNN KELLETT, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 073218**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Nowell
Opinion by Justice Pedersen, III

A jury found appellant Darwood Lynn Kellett guilty of possession of methamphetamine in an amount greater than one gram but less than four grams and aggravated assault with a deadly weapon, and jurors assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for periods of ten years and twenty years respectively. In three issues, appellant contends that the trial court erroneously denied two motions to suppress evidence and his motion for mistrial. We affirm the trial court's judgment.

## Background[1]

On the morning of January 20, 2021, witnesses observed a tractor-trailer on U.S. highway 75 veer—without signaling or braking—from the highway's left lane of traffic into the right lane, then across the median and the service road and into a parking lot, where it struck a series of cars before finally coming to rest. Appellant was driving the truck. The parking lot collision threw a woman in the parking lot into the air; she landed on the pavement and was fatally injured.

Officer Jonathan Frith was among the police officers called to the scene. His job was to maintain the scene's integrity and to identify any persons who were potentially involved. He assisted in care of the victim until emergency medical personnel arrived and then turned to appellant. When asked to describe appellant's demeanor, Firth testified: "He appeared drowsy or tired maybe. It was hard to determine. Just stood around with his hands in his pockets some and didn't seem too bothered by the whole incident." He described appellant as "extremely quiet and slow to react and [he] didn't speak very clearly."

Firth performed a brief search of appellant to be sure he had no weapons and then directed him to sit in the back seat of Firth's patrol car. Firth drove appellant to a hospital for a blood draw. While at the hospital, Firth asked appellant if he would

---

[1] Appellant does not challenge the sufficiency of the evidence supporting the jury's findings of guilt on either charge. Accordingly, we relate background facts to the limited degree necessary to provide context for appellant's issues in this Court. We expand on specific facts related to appellant's issues as they are discussed below.

consent to the blood draw. Appellant took time to consider whether he would consent, at one point saying he'd like to speak to an attorney and that he was "scared." Firth explained that he was not under arrest, and appellant ultimately consented to have his blood drawn. Firth then drove appellant to the Sherman Police Station and took him to an interview room.

At the police station, appellant was questioned by Detective Rob Ballew; the interview was recorded. As the interview began, Ballew told appellant he was being detained for questioning and was not under arrest, but Ballew read appellant his *Miranda* and article 38.22 rights.[2] Appellant answered questions concerning his activities before and surrounding the crash for approximately forty minutes. At that point, he asked for an attorney, and the interview stopped. Shortly after, Ballew applied for and obtained a search warrant for appellant's person, setting forth the facts as known by police that afternoon; his affidavit notified the court that appellant was in the custody of the Sherman Police.

## Suppression of Appellant's Police Interview

In his first two issues on appeal, appellant contends the trial court erred by refusing to suppress his recorded police interview that was conducted on the afternoon of the collision. We review a trial court's denial of a motion to suppress for an abuse of discretion. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App.

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2.

–3–

2016). We apply a bifurcated standard: affording almost complete deference to the trial court's determination of historical facts—especially those based on assessments of credibility and demeanor—and reviewing de novo any mixed questions of law and fact that do not hinge on such assessments. *Wells v. State*, 611 S.W.3d 396, 405 (Tex. Crim. App. 2020). We will sustain the trial court's ruling if it is correct under any applicable theory of law. *Id.* at 406 (citing *Furr*, 499 S.W.3d at 877).

*The Motions to Suppress*

During Officer Frith's testimony, appellant made an oral motion to suppress "any video or statements" he made after Frith placed him in the patrol car. Appellant argued that, from that point in time, he was in police custody and was effectively under arrest. Outside the presence of the jury, Frith acknowledged that, while appellant was in the patrol car, he was "restrained in the idea that he cannot get out of the back seat on his own." He testified further that he had searched appellant's person for weapons, including his pockets, but did not seize anything as a result. Frith did not place appellant in handcuffs; he acknowledged that he had no probable cause at that time to believe appellant had committed a crime. He agreed that he had detained appellant pursuant to an investigation but did not agree he had placed appellant in custody. The trial court also questioned Frith about conditions at the scene of the incident, eliciting testimony that appellant was close to where the victim was located, that it was very cold and raining, and that there was nowhere for Frith to have appellant sit down and wait outside the car given that the police were not

–4–

going to allow him to leave yet. The court overruled appellant's request to suppress any statements by appellant, noting that no contraband was seized during the search and that the blood draw that followed was performed with appellant's consent.

Appellant also filed a written motion to suppress contending that his interview with Detective Ballew was not given freely or voluntarily. The motion complained that Ballew did not indicate that appellant was free to leave; instead, Ballew told him that he had been detained for questioning and was not being arrested. Appellant argued that the clear implication was that he was not free to leave until he answered the detective's questions. The motion cited Ballew's same-day affidavit for a search warrant, which indicated that appellant "was in the custody of the Sherman Police Department." The argument concluded:

> [Appellant's] statement having been given under the threat of continued detention though not under arrest, was a violation of both [appellant's] rights to due process and his rights to not incriminate himself provided by both the United States and Texas Constitutions.

The motion did not address any matter occurring before the Ballew interview.

Ballew testified at the hearing on the motion. He explained that appellant was being held at the time for questioning and was not under arrest; in fact, appellant was not arrested that day or soon after the interview.[3] Ballew testified that as the interview began, he read appellant the *Miranda* and article 38.22 warnings even though appellant was not under arrest. He explained that the affidavit's "in custody"

---

[3] The record indicates appellant was not placed under arrest until May 2021, some five months after the incident and the Ballew interview.

reference meant only that appellant was being detained by the police at the police station, and he stated that "[t]he detention was so that we would have opportunity to speak with him, yes. And then he was informed of his rights, and if he had invoked his rights at that point, then he would have been released at that point without being questioned." In response to a question from appellant's counsel, Ballew stated that he did not know that appellant had asked for an attorney at the hospital. But the detective continued: "he was detained, not—not under arrest. And to my knowledge, Officer Frith was not questioning him regarding the—the incident. He was simply questioning—asking consent for the blood draw." According to Ballew, appellant did invoke his right to counsel about forty minutes into the interview at the police station; the interview stopped immediately.

Appellant argued that Ballew was imputed with knowledge of appellant's earlier request for counsel made to Officer Frith, and he contended that his hospital request for counsel was not waived or revoked before his questioning by Ballew. The trial court ultimately denied the motion and admitted the interview, noting that Ballew was not aware of the "vague, questionable" request for an attorney at the hospital and that Ballew "clearly went through and provided" appellant his rights before being questioned.

In this Court, appellant's complaint regarding both motions to suppress is limited to the trial court's refusal to suppress the Ballew interview.

*Right to Counsel*

The gist of appellant's first issue is that appellant invoked his right to an attorney at the hospital and, based on that request, he was entitled to counsel before Ballew questioned him at the police station. A right to counsel is recognized in the Fifth Amendment, which protects a person's being compelled to give witness against himself, and in the Sixth Amendment, which guarantees a person the assistance of counsel in a criminal prosecution. *See Griffith v. State*, 55 S.W.3d 598, 602 (Tex. Crim. App. 2001). We conclude, however, that neither of those rights could be effectively exercised by appellant when he asked for an attorney at the hospital or before the Ballew interview.

Fifth Amendment Right to Counsel:

The Fifth Amendment right to counsel is one of the special procedural safeguards outlined in *Miranda*. "It is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). Thus, the Fifth Amendment right to counsel is triggered only when a suspect is subjected to custodial interrogation. *Griffith*, 55 S.W.3d at 603. The defendant bears the initial burden of proving that a statement was the product of such a custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

We determine whether a person is "in custody" based on the circumstances surrounding the questioning and whether a reasonable person in those circumstances

would have felt he was not free to leave. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021). A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013) (citing *Stansbury v. California,* 511 U.S. 318 (1994)). The restriction upon the person's freedom of movement "must amount to the degree associated with an arrest as opposed to an investigative detention." *Id.* at 168.

To determine the proper category of a police-citizen encounter, we look at the totality of the circumstances. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). For our purposes, the difference between arrest and investigative detention involves the degree of intrusion involved in each interaction.[4] "[A]n investigative detention occurs when a person yields to the police officer's show of authority under a reasonable belief that he is not free to leave." *Id.* Thus, while a citizen's freedom of movement is limited by an investigative detention when he "yields" to the officer's authority, the limitation is temporary and is for the purpose of an investigation. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). In contrast, an arrest occurs when a person "has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an

---

[4] Arrest and investigative detention are also different because each requires a different legal justification (i.e., probable cause and reasonable suspicion, respectively). *See Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011). Frith conceded he lacked probable cause to arrest appellant; appellant does not challenge that the police had reasonable suspicion to detain and question him—it was undisputed that he drove the truck in an incident that caused significant property damage and fatal injury.

–8–

officer or person arresting without a warrant." TEX. CODE CRIM. PROC. ANN. art. 15.22.

Appellant was placed in the patrol car, taken to the hospital for a blood draw, driven to the police station, and questioned by a detective. His freedom of movement was limited by this series of events; he yielded to the authority of Officer Frith and Detective Ballew as police officers. However, he was never put in restraints, and he voluntarily submitted to the blood draw. Both officers told appellant he was not under arrest. The detention was integral to a preliminary investigation of the collision, i.e., to obtain a legal blood draw from the driver and to question that driver about the circumstances leading up to and surrounding the collision. And the detention was temporary: when appellant asked for an attorney, the questioning stopped; after a warrant was obtained and he was searched, appellant was free to leave. Assessing the totality of the circumstances in this case, we conclude a reasonable person would not have felt his freedom of movement was restrained to the degree associated with a formal arrest. *See Saenz*, 411 S.W.3d at 496. We conclude that appellant's interaction with police was an investigative detention, not a warrantless arrest. He was not in custody within the meaning of the Fifth Amendment.

Nor was appellant subject to interrogation when he initially asked for an attorney at the hospital. He was not questioned about the collision during that time— he was asked only whether he consented to a blood draw. When a police officer is

investigating driving while intoxicated, inquiring whether the driver will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*. *S. Dakota v. Neville*, 459 U.S. 553, 564 n.15 (1983). "[T]here is no Fifth Amendment right to counsel if there is no interrogation." *Griffith*, 55 S.W.3d at 603.

Appellant's statements during the Ballew interview were not produced by custodial interrogation. Accordingly, appellant had no Fifth Amendment right to counsel.

Sixth Amendment Right to Counsel:

The Sixth Amendment's right to counsel applies in all state criminal prosecutions in which the defendant is accused of a felony. *Gideon v. Wainwright,* 372 U.S. 335, 342 (1963). "Once the adversarial judicial process has been initiated, the Sixth Amendment right to counsel guarantees an accused the right to have counsel present at all 'critical' stages of the criminal proceeding." *Hughen v. State*, 297 S.W.3d 330, 334 (Tex. Crim. App. 2009) (citing *United States v. Wade,* 388 U.S. 218, 227–28 (1967)). Undergoing interrogation by the police, after charges have been brought, qualifies as a critical stage. *Id.*

In appellant's case, formal adversary judicial proceedings were not initiated until months after the incident on January 20, 2021. The State had not filed any charges against appellant on that date. Accordingly, appellant's Sixth Amendment right to counsel had not yet attached. *See Griffith*, 55 S.W.3d at 604.

We conclude that appellant's request for an attorney in the hospital had no legal effect. Appellant was not subjected to a custodial interrogation that would trigger a Fifth Amendment right, and the State had not proceeded far enough in its prosecution of appellant to implicate a Sixth Amendment right. *See id.* at 602. Accordingly, the trial court did not abuse its discretion in denying appellant's motion to suppress based on a right to counsel. We overrule appellant's first issue.

*Illegal Arrest*

In his second issue, appellant contends that the trial court erred by denying his motion to suppress the recording of his questioning by Detective Ballew because the questioning occurred following his unlawful arrest. Appellant cites to the Fourth Amendment's prohibition of unreasonable searches and seizures and correctly states that the burden is on the State to establish the reasonableness of a warrantless arrest. We have concluded that appellant was not under arrest, either formally or by implication, before the Ballew interview. No illegal arrest took place on January 20, 2021.

We overrule appellant's second issue.

**Motion for Mistrial**

In his third issue, appellant argues that the trial court erroneously denied his motion for mistrial after he appeared in the courtroom while handcuffed when no finding of particular need had been made for such restraints. We review the denial of a motion for mistrial for an abuse of discretion; we must uphold the trial court's

ruling if it is within the zone of reasonable disagreement. *Coble v. State,* 330 S.W.3d 253, 292 (Tex. Crim. App. 2010).

On the morning of the third day of trial, the jury was brought into the courtroom, and the State called Hannah Siegal to the stand. Siegal, a forensic scientist for the Department of Public Safety, was questioned briefly about her professional background and was handed a copy of the report she had prepared for appellant's case. At that point in time, the trial judge apologized for interrupting, said "[w]e're going to take a quick break," and directed the jury to return to the jury room.

When the jury had gone, the trial judge told counsel for appellant to "go ahead," and counsel stated:

> Your Honor, it was just brought to my attention—and I had not noticed it—but Mr. Kellett, the defendant, his handcuffs, which are painted red and quite obvious, had not been removed before the jury entered. I know they've been excused so that they can be removed, but he was wearing that and standing, as appropriate, for the jury when they entered. So, it's quite possible that they've been allowed to know that he's in custody and I have no choice but to ask for a mistrial.

The State's attorney responded that there was no evidence that the jury had seen the handcuffs and he thought that for a mistrial to be granted, the jury had to have seen the restraints.

The trial judge stated:

> Well, if we have to ask them, then they'll know. . . . So, we can't do that. I didn't notice it. I think the bailiff's figured it out. Somebody did. . . . It was very quick. I will be glad—I mean, again, I will emphasize, as I always do, that the fact that somebody's in custody that that's not

–12–

an indication of guilt. And that's going to be in the jury charge. I think they often believe people are in jail, but they don't know. And I do think —I don't—I don't—if it was noticed, I don't know that it was noticed. I didn't see it. I was in here. Maybe—you know, I don't know. The only way I can ask the jury is if they saw it. If I do, then they'll all know that he's in. So, I don't think I can cure it by asking the jury.

The judge denied the motion for mistrial.

Texas law has long recognized that requiring an accused person to wear handcuffs before the jury can infringe his constitutional presumption of innocence. *Clark v. State*, 717 S.W.2d 910, 918 (Tex. Crim. App. 1986). Both the Fifth and Fourteenth Amendments prohibit the use of physical restraints that are visible to the jury unless the trial court determines they are justified by a specific state interest in the particular trial. *Bell v. State*, 415 S.W.3d 278, 281 (Tex. Crim. App. 2013). Visible shackling undermines the presumption of innocence by suggesting to jurors that that the justice system itself has determined that it is necessary to separate the defendant from the community at large. *Id.* at 281–82.

In this case, however, it is undisputed that the court did not require appellant to wear restraints before the jury; the failure to remove the handcuffs before the jury entered the courtroom that morning was merely an oversight. Moreover, nothing in the record indicates that the jury ever saw or otherwise became aware that appellant was wearing handcuffs. The judge was not aware of the handcuffs, and he was well situated to observe such factors as how appellant stood and sat in the courtroom and where the jurors' attention was focused. Even appellant's counsel did not notice the

handcuffs, although we can presume he stood and sat right next to appellant.[5] The actual circumstance of appellant's being handcuffed and being in the same room as the jury lasted only a matter of minutes.[6]

We share earlier courts' "appropriate unwillingness to make the factual assumption that the jury perceived a defendant's shackles in the absence of any record support." *Bell*, 415 S.W.3d at 282 (citing *Long v. State,* 823 S.W.2d 259, 283 (Tex. Crim. App. 1991) and *Cooks v. State*, 844 S.W.2d 697, 723 (Tex. Crim. App. 1992)). Here, we cannot conclude there was a reasonable probability that jurors observed appellant's handcuffs during the short period of time that elapsed before they were removed from the courtroom. *Id.* at 283. Although appellant should not have been restrained before the jury, we conclude that he suffered no harm on that account. *See Long*, 823 S.W.2d at 283; *Cooks*, 844 S.W.2d at 723.

The trial court did not abuse its discretion by denying the motion for mistrial. We overrule appellant's third issue.

---

[5] Appellant was the only defendant at trial, and he was represented by a single attorney.

[6] While the record does not indicate the precise amount of time that elapsed, we can use the reporter's printed record to estimate the duration. According to the reporter, the jury entered the courtroom that morning in the middle of page 7; at the top of page 11, the trial judge interrupted the proceedings and removed the jury.

**Conclusion**

We affirm the trial court's judgment.

221212f.u05
221213f.u05
Do Not Publish
TEX. R. APP. P. 47

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DARWOOD LYNN KELLETT,
Appellant

No. 05-22-01212-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. 073218.
Opinion delivered by Justice
Pedersen, III. Justices Molberg and
Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 19th day of March, 2024.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DARWOOD LYNN KELLETT,
Appellant

No. 05-22-01213-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. 073219.
Opinion delivered by Justice
Pedersen, III. Justices Molberg and
Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 19th day of March, 2024.